THE EXECUTRIX OF JOHN DEN BLAKER, deceased,

*v.*

THE RECEIVERS OF THE NEW JERSEY MIDLAND RAILWAY COMPANY.

1. Negligence by a railroad company does not relieve a person attempting to cross its track from the duty of exercising ordinary care and prudence.

2. When a person is killed by collision with a locomotive, if it appears that his carelessness materially contributed to the disaster, his next of kin have no right to damages.

3. A person approaching a railroad crossing is bound to look and listen, and if he fails to do so, and injury ensues, he is without remedy; or if, using his eyes and ears, he sees or hears an approaching train, and foolishly tries the experiment of crossing in advance of it, and fails, his failure will be esteemed his own fault.

On petition for a remedy for damages alleged to have been sustained in consequence of death, where death was caused by negligence.

*Mr. M. C. Gillham* and *Mr. Coffey*, for petitioner.

*Mr. C. B. Alexander*, of New York, for receivers.

THE VICE-CHANCELLOR.

The petitioner seeks to recover damages for the death of her husband. Her claim is made under the statute giving a remedy to the personal representatives of a person killed, where death is caused by the wrongful act, neglect or default of another. (*Rev.* p. 294.) She charges that the death of her husband was caused by the negligence of the employes of the receivers. The negligence imputed to them need not be particularized—it may be admitted to be sufficient to give her a right of action. The important question is, Was not the person killed also guilty of negligence

Blaker's Executrix *v.* Receivers of N. J. Midland Railw. Co.

to such an extent as to deprive his next of kin of any right to damages? In cases of this class, the court is not at liberty to measure or compare the faults of the parties to see which is most faulty, and then compel the most culpable to make compensation to the other. Negligence by one party does not relieve the other from the duty of exercising ordinary care and prudence. In this case, it may be conceded that the employes of the receivers were grossly careless, yet, if it appears that the deceased was also careless, and his carelessness materially contributed in producing the collision which resulted in his death, or was the proximate cause of it, his next of kin have no right to damages. *Drake* v. *Mount*, 4 *Vr.* 445; *Harper* v. *Erie Railw. Co.*, 3 *Vr.* 90; *Baxter* v. *Troy & Boston R. R. Co.*, 41 *N. Y.* 61; *Wilcox* v. *Rome & Watertown R. R. Co.*, *Id.* 358; *Railroad Co.* v. *Houston*, 5 *Otto* 702.

Mr. Den Blaker, the petitioner's testator, was killed June 12th, 1876, while attempting to cross the track of the Midland Railway, on a public highway known as Midland avenue, in the county of Bergen. The railway at this crossing is built in a cut which, at the crossing, is about four feet deep, and increases in depth as it extends westward, until it reaches a depth of twelve and a half feet above the top of the rails. The length of the cut, from its western extremity to the crossing, is five hundred and eighty-four feet. Midland avenue, as it approaches the railway from the north, is also built in a cut for a distance of one hundred and thirty-five feet, and descends to the railway, from the point where the descent begins, at the rate of two and a half feet in every fifty feet. At a point on Midland avenue nine hundred feet north of the crossing, the track of the railway west of the cut can be seen for over one-fourth of a mile; at a point on the avenue seventy-five feet north of the centre line of the railway at the crossing, a person sitting in an open wagon can see up the cut, westward, one hundred and sixty feet; at fifty feet distant, he can look up the cut a distance of two hundred and sixty feet, and at twenty-five

feet distant he can see through the cut. On the day the accident occurred, Mr: Den Blaker had been at work on some land north of the railway, which he was farming. He lived south of the railway, and had been accustomed to cross it frequently in going to and from his work. On the day in question, his work had been interrupted by a rain, and he had started to return home. He was in an open farm-wagon drawn by two horses. He was seen by an acquaintance when about four hundred yards north of the railway; he was then going towards it on what the witness describes as a jog trot; he had a blanket over his shoulders and drawn up around his neck, which he held together, in front, with one hand, while he held the reins with the hoter. As he passed the witness, he said he had some work to do and must hurry home. At this point the track of the railway west of the cut is in open view for about one-fourth of a mile. From this point the evidence furnishes no information respecting Mr. Den Blaker's movements or conduct until his horses were in the act of stepping upon the railway. Death was inflicted by an eastward bound train, consisting of two passenger cars and a locomotive, running at a speed of twenty-five or thirty miles an hour. The fireman says he first saw Mr. Den Blaker when the locomotive was twenty-five or thirty yards from the crossing; that his horses were just stepping on the track on a very slow walk; that Mr. Den Blaker had a blanket about his shoulders, his hat down over the side of his face, to keep, as he supposes, the rain out of his ear; his hands were resting on his legs, and the reins were slack. He further says that Mr. Den Blaker did not raise his head, nor make any effort to stop or escape, and that he does not believe that he saw the locomotive at all. Both the fireman and engineer swear that the bell was rung constantly while they were passing through the cut, and up to the time of the collision. A passenger on the train, and also two persons who were about four hundred yards north of the crossing, at the time of the disaster, swear that they did not hear

the bell. A moderate wind was blowing from the east, which unquestionably reduced both the velocity and volume of the sound of the approaching train perceptible at the crossing.

It is now an established principle of law, almost universally recognized, that a person intending to cross a railroad track, is bound to look and listen for an approaching train before going upon it, and if he fails to do so, and injury ensues, he is without remedy; or, if he looks and listens, and sees or hears a train approaching, and then daringly assumes the hazard of attempting to cross in advance of it, and fails, he must bear the consequences of his folly. In a case substantially identical in its facts with the one in hand, the supreme court of the United States recently said, speaking by Justice Field : " The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for his safety. Negligence of the company's employes in these particulars was no excuse for negligence on his part. He was bound to look and listen, before attempting to cross the railroad track, in order to avoid an approaching train, and not go carelessly into a place of danger. Had he used his senses, he could not have failed both to hear and see the train which was coming. If he omitted to use them, and went thoughtlessly upon the track, he was guilty of culpable negligence, and so far contributed to his injuries as to deprive him of any right to complain of others. If, using them, he saw the train coming, and yet undertook to cross the track (instead of waiting for the train to pass), and was injured, the consequences of his mistake and temerity cannot be cast upon the company. No railroad company can be held liable for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure." *Railroad Co.* v. *Houston,* 5 *Otto* 702. Precisely similar views have been repeatedly enunciated by the courts of this state. A simple reference to the cases is all that need be done.

Even a brief summary of the principle decided in each would seem more like a labor of display than necessity or utility. *Central R. R.* v. *Moore,* 4 *Zab.* 831; *Runyon* v. *Central R. R.,* 1 *Dutch.* 558; *Telfer* v. *Northern R. R.,* 1 *Vr.* 199; *Harper* v. *Erie Railway,* 3 *Vr.* 88; *N. J. R. R. & Trans. Co.* v. *West, Id.* 95; *N. J. Express Co.* v. *Nichols,* 4 *Vr.* 439; *Drake* v. *Mount, Id.* 445; *Central R. R.* v. *Van Horn,* 9 *Vr.* 138; *Del., Lack. & West. R. R.* v. *Toffey, Id.* 530.

If we test the claim of the petitioner by these rules, it is obvious it must be rejected. It is plain, the disaster could not have happened had the deceased, in approaching the crossing, exercised the caution which the law requires, and which any person of reasonable prudence would have exercised in approaching a place of such well-known danger. So far as appears, his organs of sight and hearing were perfect, and had he made that use of them which a reasonable regard for his safety demanded, it would have been impossible for him not to have both seen and heard the train in time to have averted a collision. If the statements of the fireman are believed—and there is no evidence contradicting them—it is manifest death was the result of foolhardy heedlessness. The fact that the disaster happened, tends very strongly, in my judgment, to confirm the substantial truth of his story. But, in my opinion, scarcely any rational view of the evidence, as a whole, can be adopted, which will not fully establish such a complete case of contributory negligence as bars all right to damages.

The relief asked must be denied, and the petition dismissed.