EDITH T. SORONEN, AS ADMINISTRATRIX AND ADMINIS-
TRATRIX *AD PROSEQUENDUM* OF JOHN G. SORONEN,
DECEASED, PLAINTIFF-RESPONDENT AND CROSS-
APPELLANT, v. OLDE MILFORD INN, INC., A NEW
JERSEY CORPORATION, AND JAMES FREI, DEFEND-
ANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued February 7, 1966—Decided April 4, 1966.

*Mr. H. Curtis Meanor* argued the cause for defendants-appellants and cross-respondents (*Messrs. Lamb, Blake, Hutchinson & Dunne,* attorneys).

*Mr. William V. Breslin* argued the cause for plaintiff-respondent and cross-appellant (*Messrs. Fornabai & Zimmerman,* attorneys; *Mr. Thomas J. Spinello,* on the brief).

The opinion of the court was delivered by

JACOBS, J.  The defendants appealed to the Appellate Division from a judgment entered in the plaintiff's favor pursuant to a verdict of the jury.  The plaintiff cross-appealed seeking to have interest added to the judgment from the date of the accrual of her cause of action.  We certified before argument in the Appellate Division.

The decedent John G. Soronen was seen in the Manor Tavern, New Milford, at 8:30 A. M. on Monday, October 30, 1961, and was seen drinking at home later that morning.  At about noon he was seen at a bus stop near the Manor Tavern and shortly after 1 P. M. he entered the Olde Milford Inn at 133 Center Street, New Milford.  While there he was served at the bar with two shots of whisky and three beers.  At about 3 P. M. he rose from the stool on which he was sitting and took several steps before he fell striking his head against a steel column.  He died of a fractured skull at about 11 P. M.

Asserting that the defendants Olde Milford Inn, Inc. and James Frei had negligently served alcoholic beverages to the decedent while he was visibly intoxicated and that their negligent conduct had proximately caused or contributed to his death, the decedent's widow instituted an action for wrongful death under *N. J. S.* 2A:31-1 *et seq.* At the close of the plaintiff's case, the trial judge ruled that there was no evidence from which a jury could reasonably find that when the liquor was served the bartender knew or should have known that the decedent was intoxicated. The action was dismissed and the plaintiff appealed to the Appellate Division which reversed in an opinion reported at 84 *N. J. Super.* 372 (1964). After reviewing the testimony, the Appellate Division concluded that there was enough evidence to go to the jury. 84 *N. J. Super.,* at *pp.* 378-381. It rejected the defendants' contention that, even if it be assumed they were negligent, there could be no recovery by the plaintiff because of the decedent's contributory negligence. It held that contributory negligence was not available as a defense to a liquor licensee who has sold alcoholic beverages to a visibly intoxicated person and has thereby proximately caused or contributed to his accidental death. 84 *N. J. Super.,* at *pp.* 377-378.

At the retrial the plaintiff again presented her evidence to establish that the decedent was visibly intoxicated when served by Frei. Officer Rittgers of the New Milford Police Department testified that he arrived at the Olde Milford Inn at 3:04 P. M. in response to a call. He found the decedent lying on the tavern floor bleeding profusely. He called for a doctor and the police surgeon, Dr. Frieman, arrived in about five minutes. Dr. Frieman testified that when he approached Soronen "there was a very, very profuse, profound odor of alcohol from him." He examined his reflexes and found they were "just about nonexistent." He expressed the opinion that he was in a state of acute alcoholism and had been so for at least two hours. Dr. Greenfield, the assistant county physician who examined Soronen's body about 8 to 10 hours after death, testified that he noticed a "strong odor of

alcohol." This caused him to list "acute alcoholism" as a contributory factor although he testified that the cause of death was "a skull fracture with intracranial hemorrhage."

Dr. Effron, who testified for the defendants, had been called in by Dr. Frieman as a consultant and had examined Soronen at about 8:15 P. M. He stated that he did not notice any odor of alcohol or find any "evidence of any complications due to acute alcoholism." Dr. Flicker, who also testified for the defendants, expressed the opinion that the head injuries sustained by Soronen at the time of his fall accounted for the lack of reflexes. The defendant Frei and several regular patrons of the Olde Milford Inn testified that when the decedent was served he did not appear to be intoxicated. Frei's back was toward the bar when the decedent fell. He heard the fall and turned around but remained behind the bar. Neither he nor any of the patrons went near the fallen man. He testified that although he alone was in charge of the premises, it was not his "place to go over there." One of the patrons, Mr. Flanagan, called the police. He sat next to Soronen at the bar but had no conversation with him although he heard him "mumbling."

We are satisfied that there was legally sufficient evidence from which a jury could find that Soronen was visibly intoxicated when he was served by Frei. The time, the place, the strange silent behavior of those about when Soronen fell, and the testimony of Doctors Frieman and Greenfield gave rise to inferences which the jury was at liberty to accept in negation of testimony by Frei that Soronen "looked all right" to him. Frei's duty not to serve Soronen while he was intoxicated was firmly embodied in a long-standing regulation of the Division of Alcoholic Beverage Control which explicitly prohibits the service on licensed premises of alcoholic beverages to anyone who is "actually or apparently intoxicated." See *Rappaport v. Nichols*, 31 N. J. 188, 202 (1959). If despite the regulation, Frei wrongfully served Soronen though he then knew or should have known of Soronen's intoxicated condition, Frei and the Olde Milford Inn subjected themselves to common

law negligence claims for damages proximately resulting from the wrongful service. See *Rappaport v. Nichols, supra.*

In *Rappaport* a minor was served in several taverns while he was intoxicated. After leaving the last tavern, he drove his car and collided with another car driven by Rappaport who died as a result of injuries received in the collision. Rappaport's widow sued the taverns, alleging that their service of alcoholic beverages to the minor while intoxicated constituted negligent conduct which had proximately caused or contributed to the death of her husband. In holding that she had a cause of action we applied traditional negligence principles, rejecting authorities elsewhere which had, on one ground or other, immunized tavern keepers from comparable common law negligence claims. In the course of our opinion we expressed views which are readily adaptable to the circumstances presented here. Thus we found that the departmental regulation against the sale of alcoholic beverages to anyone actually or apparently intoxicated was intended to protect both the intoxicated person and the general public. 31 *N. J.,* at *p.* 202; see *Galvin v. Jennings,* 289 *F. 2d* 15, 17 (3 *Cir.* 1961). We noted that a tavern keeper who serves alcoholic beverages when he knows or should know that the patron is intoxicated, may properly be found to have created an unreasonable risk of harm and to have thus engaged in negligent conduct on which a common law claim for damages may be grounded. 31 *N. J.,* at *pp.* 202–203. And we noted further that the tavern keeper, as tortfeasor, may be held answerable for the injuries which result in the ordinary course of events from his negligent conduct and that it is sufficient if his conduct was a substantial factor in bringing about the injuries. 31 *N. J.,* at *p.* 203.

Although they have not attacked it directly, the defendants have submitted an extended presentation in which they conclude that "except for Pennsylvania decisions, *Rappaport* seems to stand alone within American jurisdictions as a common law principle." The Pennsylvania decisions are *Majors v. Brodhead Hotel,* 416 *Pa.* 265, 205 *A. 2d* 873 (1965), *Jar-*

*dine v. Upper Darby Lodge No. 1973, Inc.,* 413 *Pa.* 626, 198 *A. 2d* 550 (1964), *Smith v. Clark,* 411 *Pa.* 142, 190 *A. 2d* 441 (1963), and *Schelin v. Goldberg,* 188 *Pa. Super.* 341, 146 *A. 2d* 648 (1958). *Waynick v. Chicago's Last Department Store,* 269 *F. 2d* 322, 77 *A. L. R. 2d* 1260 (7 *Cir.* 1959), *certiorari* denied 362 *U. S.* 903, 80 *S. Ct.* 611, 4 *L. Ed. 2d* 554 (1960), cited in *Rappaport* (31 *N. J.,* at *p.* 198), may still be viewed as lending support for recognition of the common law principle in jurisdictions having no dram shop legislation, despite the defendants' citation of *Jones v. Bourrie,* 369 *Mich.* 473, 120 *N. W. 2d* 236 (1963). Further support may readily be gathered from the recent opinions rendered in *Colligan v. Cousar,* 38 *Ill. App. 2d* 392, 187 *N. E. 2d* 292, 301 (1963), *Mitchell v. Kelner, Tenn. App.,* 393 *S. W. 2d* 755, 758 (1964), *Ramsey v. Anctil,* 106 *N. H.* 375, 211 *A. 2d* 900, 901 (1965), and *Berkeley v. Park,* 47 *Misc. 2d* 381, 262 *N. Y. S. 2d* 290, 293 (1965). The law review comments have been substantially unanimous in their support. See Oberst, "Torts," 36 *N. Y. U. L. Rev.* 416, 423 (1965); 49 *Minn. L. Rev.* 1154 (1965); 60 *Colum. L. Rev.* 554 (1960); 58 *Mich. L. Rev.* 1075 (1960); 48 *Geo. L. J.* 791 (1960); 48 *Ky. L. J.* 611 (1960); 13 *Vand. L. Rev.* 1308 (1960); 5 *Vill. L. Rev.* 694 (1960); *cf.* 12 *Baylor L. Rev.* 388 (1960); 14 *Rutgers L. Rev.* 618 (1960). Nothing which has occurred since *Rappaport* was handed down in 1959 causes us to question its principles or its policy; we now reaffirm it and take this occasion to reiterate the thoughts which were expressed in its concluding paragraph and are clearly pertinent here:

"Although it is evident that the strict civil liability prevailing by statute in many of the states is a much heavier responsibility, the defendants urge that the sustaining of the plaintiff's complaint will place an 'inconceivable' burden on them. We are fully mindful that policy considerations and the balancing of the conflicting interests are the truly vital factors in the molding and application of the common law principles of negligence and proximate causation. But we are convinced that recognition of the plaintiff's claim will afford a fairer measure of justice to innocent third parties whose injuries are brought about by the unlawful and negligent sale of alcoholic beverages to

minors and intoxicated persons, will strengthen and give greater force to the enlightened statutory and regulatory precautions against such sales and their frightening consequences, and will not place any unjustifiable burdens upon defendants who can always discharge their civil responsibilities by the exercise of due care. It must be borne in mind that the plaintiff's complaint has no relation to service by persons not engaged in the liquor business or to lawful sales and service by liquor licensees, or to sales by reasonably prudent licensees who do not know or have reason to believe that the patron is a minor or is intoxicated when served; the allegations of the complaint are expressly confined to tavern keepers' sales and service which are unlawful and negligent. Liquor licensees, who operate their businesses by way of privilege rather than as of right, have long been under strict obligation not to serve minors and intoxicated persons and if, as is likely, the result we have reached in the conscientious exercise of our traditional judicial function substantially increases their diligence in honoring that obligation then the public interest will indeed be very well served." 31 *N. J.*, at *pp.* 205-06.

The defendants contend that, even if it be assumed they were negligent, the plaintiff's action should nevertheless be barred by the decedent's contributory negligence in getting so intoxicated he could not take care of himself. The claim here is by the widow who is not charged with any contributory fault, but under our present law her rights rise no higher than those of her husband. See *N. J. S.* 2A:31-1 *et seq.; Blaker's Executrix v. Receivers of N. J. Midland Ry. Co.*, 30 *N. J. Eq.* 240 (*Ch.* 1878); *cf. Shutka v. Pennsylvania R. R. Co.*, 74 *N. J. Super.* 381, 391 (*App. Div.*), certif. denied 38 *N. J.* 183 (1962). We are brought then to the question of whether contributory negligence is available as a defense to a tavern keeper who negligently sells alcoholic beverages to a visibly intoxicated person and proximately causes or contributes to his resulting injury. In holding that it is not, the Appellate Division pointed out that the licensee's acknowledged duty not to serve intoxicated persons is for the protection of the individual as well as the public and that this duty "would be rendered meaningless to a large extent if a tavern keeper could avoid responsibility by claiming that it was the person's own fault if he drank too much." 84 *N. J. Super.*, at *p.* 377.

In *Schelin v. Goldberg, supra,* 188 *Pa. Super.* 341, 146 *A. 2d.* 648, a jury verdict was sustained in favor of a patron who was injured in the defendant's tavern where he had been served while visibly intoxicated. The defense of contributory negligence was held to be unavailable. In the course of its opinion, the court commented approvingly on the principle expressed in section 483 of the *Restatement of Torts,* that contributory negligence is inapplicable where the defendant's negligence consists in the violation of a statute enacted "to protect a class of persons from their inability to exercise self-protective care." It noted that Pennsylvania's prohibition against the service of alcoholic beverages to visibly intoxicated persons was enacted not only to protect society but also to protect intoxicated persons against their own incapacity. 146 *A. 2d* 652. This interpretation was akin to that announced by us in *Rappaport* (31 *N. J.,* at *p.* 202) and while our prohibition is found in a departmental regulation rather than in the statute itself, we consider that distinction to be of no significance. For present purposes the regulation may be taken to have the full force of law. See *Restatement (Second), Torts* § 483 comment (a) (1965); *Cino v. Driscoll,* 130 *N. J. L.* 535, 540 (*Sup. Ct.* 1943).

Later Pennsylvania cases have adhered to *Schelin.* In *Majors v. Brodhead Hotel, supra,* 416 *Pa.* 265, 205 *A. 2d* 873, the defendant hotel served liquor to a patron while he was visibly intoxicated. He became very drunk and after causing a commotion he was confined in a room till others left the premises. He crawled out a window and was seriously injured. He sued the hotel and the jury returned a verdict in his favor which was sustained on appeal. The Pennsylvania Supreme Court rejected the defendant's contention that contributory negligence should have been submitted as an issue to the jury, saying:

"Defendant attempts to distinguish *Schelin* on the ground that there plaintiff was intoxicated before arriving at defendant's bar while in this case plaintiff was sober when he arrived and became drunk on the premises. To state the distinction is to show that it is

without merit. The statute enjoins defendant's conduct *when* plaintiff is visibly intoxicated regardless of *where* he may have become so intoxicated.

Defendant also urges that the statute was intended to protect only 'innocent' intoxicated persons and not persons who 'consciously' reduce themselves into a state of intoxication. This distinction is immaterial. The statute was intended to protect persons *when* they are visibly intoxicated regardless of *how* they got that way." 205 *A. 2d,* at *p.* 876.

In *Galvin v. Jennings, supra,* 289 *F. 2d* 15, the plaintiff alleged that he was served in a New Jersey tavern while noticeably intoxicated, that he was assisted by the tavern keeper in driving off, and that he was injured in an ensuing accident. Applying New Jersey law, the Court of Appeals for the Third Circuit held that the plaintiff had set forth a cause of action on alternative grounds, one resting on *Rappaport.* In holding that contributory negligence was not an issue in the case, the court made reference to various statutory prohibitions which are designed to protect incompetents against the consequences of their incompetency and which would be defeated if contributory negligence were available as a defense. 289 *F. 2d,* at *p.* 19; see *Restatement (Second), Torts* § 483 comment (c) (1965). Illustrative are child labor acts (*Pitzer v. M. D. Tomkies & Sons,* 136 *W. Va.* 268, 67 *S. E. 2d* 437 (1951)), statutory prohibitions against the sale of firearms to minors (*Tamiami Gun Shop v. Klein,* 109 *So. 2d* 189 (*Fla. App.*), aff'd 116 *So. 2d* 421 (*Fla.* 1959)), and safety acts for the protection of workmen (*Koenig v. Patrick Constr. Corp.,* 298 *N. Y.* 313, 83 *N. E. 2d* 133, 10 *A. L. R. 2d* 848 (1948)). See *Prosser, Torts* 435–436 (*3d ed.* 1964). And as indicated by *Schelin* and *Galvin,* acts prohibiting the sale of liquor to intoxicated persons may also fairly be viewed as illustrative. See *Dart v. Pure Oil Co.,* 223 *Minn.* 526, 27 *N. W. 2d* 555, 559–61 (1947); *cf.* Prosser, "Contributory Negligence as Defense to Violation of Statute," 32 *Minn. L. Rev.* 105, 118–23 (1948); Comment, "Contributory Negligence as Defense to Statutory Tort," 15 *U. Chi. L. Rev.* 779, 781 (1948).

Many states have dram shop acts in which the legislature has specifically fixed the scope and extent of the tavern keeper's civil responsibility for injuries which result from his service of alcoholic beverages to an intoxicated person. We have no such act and must therefore deal with the common law principles of negligence and proximate causation. In molding and applying these principles we recognize here, as in *Rappaport,* that the balancing of the conflicting interests and the weighing of the policy considerations are the vital factors. Those who enter the licensed liquor business do so with full awareness that it is heavily fraught with dangers and that the members of the general public as well as the individual patron are entitled to receive and do receive high measures of protection from its abuses. The regulatory restrictions imposed on liquor licensees are therefore severe and many and they properly include the flat prohibition against service to a patron who is already intoxicated.

In aid of the policy embodied in this prohibition, we held in *Rappaport* that when injuries proximately result to a third person from service to a patron who is visibly intoxicated, the tavern keeper may fairly be held civilly accountable. In further aid of the policy, a tavern keeper may with equal reason be held civilly accountable for injuries which proximately result to the patron himself. The accountability may not be diluted by the fault of the patron for that would tend to nullify the very aid being afforded. Since the patron has become a danger to himself and is in no position to exercise self-protective care, it is right and proper that the law view the responsibility as that of the tavern keeper alone. Accordingly, we subscribe to the Appellate Division's holding that the defense of contributory negligence was not available to the defendants here. 84 *N. J. Super.,* at *pp.* 377–378.

Though the defendants were barred from asserting any defense of contributory negligence, they were entitled to a fair trial including a fair charge on the issue of negligence.

On that issue, the plaintiff's burden was to satisfy the jury, not only that the decedent was served while intoxicated, but also that the defendants knew or should have known from the circumstances that the decedent was intoxicated when the service occurred. See 31 *N. J.*, at *p.* 202. Or, in other words, as the Appellate Division's opinion setting aside the original dismissal clearly set forth, it was service "to a visibly intoxicated person" upon which the plaintiff's common law negligence claim was grounded. See 84 *N. J. Super.*, at *p.* 375.

The defendants contend that the trial court's charge erroneously permitted the jury to find them negligent in serving the decedent while he was actually intoxicated, even though it may not have been satisfied that there was visible intoxication, in the sense that the defendants either knew or should have known of the intoxicated condition when the service was made. That the charge contained legal error, duly objected to, would appear to be beyond dispute. At its commencement the trial judge stated that the basis of the plaintiff's suit was service when the decedent was "either actually or apparently or visibly intoxicated." Later he expressed the law to be that if the patron "is in fact intoxicated or if he appears to be intoxicated or is visibly intoxicated, the mere sale of an intoxicating liquor in that condition is in itself negligence." Still later he said that if the decedent was "either visibly intoxicated, or apparently intoxicated or actually intoxicated" then service to him would be considered "an act of negligence." And finally he stated that service to an intoxicated person "is negligence on the part of the bartender or tavern keeper and no contributory negligence can be charged against the recipient."

The defendants submitted various requests to charge. Number 1 set forth that a verdict for the plaintiff could be returned only if "Frei either knew or should have known Soronen was intoxicated when he served him." See 31 *N. J.*, at *p.* 202. Number 2 set forth that "if Soronen was not visibly intoxicated" the defendants breached no duty and the

verdict should be in their favor. See 84 *N. J. Super.*, at *p.* 375. Number 3 set forth that there must be a finding "that Soronen was actually or apparently intoxicated in the eyes of a reasonable person" in order to charge the defendants with violation of any duty. See 31 *N. J.*, at *pp.* 201–203. All three requests were denied.

Request number 4, the only one of the defendants' requests which was granted, did state briefly at the very close of the charge that "You are to apply the test of whether or not a reasonable person would have concluded by observation or contact with Soronen that he was actually or apparently or visibly intoxicated, and that Frei should have by this same test determined that fact in order to hold these defendants guilty of negligence." This, without any withdrawal or alteration whatever in the preceding instructions could hardly help but confuse the jury; in any event, we cannot accept the suggestion that it effectively served to cure the patent error earlier in the charge. See *King v. Patrylow*, 15 *N. J. Super.* 429, 434–435 (*App. Div.* 1951); *Guzzi v. Jersey Central Power & Light Co.*, 36 *N. J. Super.* 255, 260 (*App. Div.*), certif. denied 19 *N. J.* 339 (1955).

The imposition of civil responsibility upon a tavern keeper for damages resulting from his negligent service of alcoholic beverages to a visibly intoxicated patron strongly serves the public interest and does not impose any undue burden, for the tavern keeper may readily protect himself by the exercise of reasonable care. However, an undue burden not relievable by care would be imposed if the tavern keeper were held civilly responsible in the absence of intoxication visible to him, in the sense that he knew or should have known of the condition from the attendant circumstances. The crucial line between civil responsibility and nonresponsibility is legally clear and should be clearly conveyed to the jury. Since we cannot say with any confidence that this was done during the last trial, we have concluded that the sound administration of justice will best be served

by retrial. See *Smith v. Clark, supra,* 411 *Pa.* 142, 190 *A.* 2d 441.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and ·Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO.—6.

*For affirmance*—None.