190 N.J. Super. 491 (1983)
464 A.2d 1136
JAMES A. BUCKLEY, ETC., PLAINTIFFS-RESPONDENTS,
v.
ESTATE OF CHARLES PIROLO ET AL., DEFENDANTS-RESPONDENTS. PATRICIA CEROLI, ETC., PLAINTIFFS-RESPONDENTS,
v.
ESTATE OF CHARLES PIROLO ET AL., DEFENDANTS-RESPONDENTS. JOAN REIDINGER, ETC., PLAINTIFFS-RESPONDENTS,
v.
OCEAN AVIATION, INC. ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1983.
Decided May 3, 1983.
*492 Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.[1]
Harold A. Schuman argued the cause for appellant Forked River House (Schuman & Butz, attorneys).
Michael E. Cunningham argued the cause for respondents Joan Reidinger, etc. (Starkey, Kelly, Cunningham, Blaney & White, attorneys).
*493 James J. Curry, Jr. argued the cause for respondents James A. Buckley and Patricia Ceroli et als. (Curry & Stein, attorneys).
The opinion of the court was delivered by COLEMAN, J.H., J.A.D.
The novel issue raised by this appeal is whether a dram shop that sells intoxicating beverages to an actually or apparently intoxicated pilot of a private airplane, who crashes the plane, killing himself and his passengers, can assert the defense of contributory negligence against claims made on behalf of the unintoxicated deceased passengers on the flight who knew the pilot was probably intoxicated. In other words, does the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., apply to this dram shop under the limited facts of this case. The trial judge answered in the negative. We disagree and reverse for the reasons which follow.
In this tragic case three wrongful death actions (N.J.S.A. 2A:31-1 et seq.) were filed by the personal representatives of three passengers killed in the crash. In each case the defendants are Forked River House, a tavern-restaurant (dram shop), Ocean Aviation, Inc., the lessor of the aircraft, and the Estate of Charles Pirolo, the licensed pilot. The case filed by the pilot's survivors is not before us because that matter was settled. The three actions were consolidated for trial because common questions of fact and law existed. All defendants alleged that the passengers were negligent because they rode with the pilot who they knew or should have known was actually or apparently intoxicated. The jury found that the passengers and the dram shop were negligent, to wit: (1) Roseann Buckley 6 3/4%, the dram shop 5 3/4%; (2) Karl Elms 20%, the dram shop 6%; and (3) Charles Reidinger 20%, the dram shop 6%. The trial judge molded the verdict to deny the dram shop the benefit of the passengers' negligence. Other defendants were not affected by that ruling, and they have not appealed.
*494 From the evidence presented at the trial, the jury could have found the following facts: On Saturday, December 4, 1976 Charles Reidinger worked with Charles Pirolo and their mutual employer Hugo Lotto from 8 a.m. until about 12 noon. The three men went to defendant Forked River House after work. While there Pirolo was served three or four beers and four or five double shots of scotch whiskey. At about 2 p.m. the three men went to a friend's house and each consumed a bottle of beer. Between 4:00 p.m. and 4:20 p.m. Pirolo and Reidinger met Karl Elms and others at the Forked River House where they were served additional alcoholic beverages. A witness testified that Pirolo was drunk before he left the tavern.
Pirolo suggested a plane ride and arranged to charter and pilot a twin engine aircraft from Ocean Aviation, Inc., the operator of the Miller Air Park, which was ten miles from Forked River. At 5:15 p.m. Pirolo took Reidinger, Elms, Stephen Racz and Richard Gardener for a plane ride. The plane buzzed the Forked River House several times at altitudes of 70 to 80 feet. The plane touched some tree tops and might have clipped others.
At about 7:30 p.m. Pirolo and his passengers returned to the Forked River House where they discussed the flight they had just completed. Pirolo consumed two more bottles of beer before leaving the tavern at about 8 p.m. for a second flight. Decedents Elms and Reidinger joined Pirolo on the second and fatal flight which departed at about 9 p.m. Roseann Buckley, who ate dinner at the Forked River House but did not consume any intoxicating beverages, also accompanied the three others on the second flight. At 9:20 p.m. the aircraft struck a radio tower near the Forked River House and crashed, killing all aboard.
A postmortem examination revealed that Pirolo had a brain alcohol reading of .171% at the time of death. An expert witness, who testified for plaintiffs, calculated that at 8 p.m., when Pirolo was at the dram shop, his blood alcohol was .217%.
*495 During the trial the judge ruled that comparative negligence did not apply to defendant Forked River House because of public policy which imposes liability on tavern keepers for injuries that occur as a result of selling alcoholic beverages to persons actually or apparently intoxicated.
In this appeal Forked River House contends that the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., has modified our dram shop law enunciated in cases starting with Rappaport v. Nichols, 31 N.J. 188 (1959). The main thrust of Forked River House's argument involves two contentions: (1) the underpinning for our dram shop law is the harsh effect of common law contributory negligence; and (2) the enactment of N.J.S.A. 2A:15-5.1 et seq. is applicable to all negligence actions. Hence, it argues that under our modified comparative negligence law, the harsh effect of common law contributory negligence has been removed. Consequently, it argues, that since this is a negligence case, the negligence of the passengers should be compared to the negligence of the dram shop.
Generally, the contributory negligence of plaintiffs' decedents applies to claims made by survivors. See Soronen v. Olde Milford Inn, Inc., 46 N.J. 582, 589 (1966); Blaker's Ex'x v. Receivers of N.J. Midland R. Co., 30 N.J. Eq. 240 (Ch. 1878). The defense of contributory negligence was also available to a tavern keeper in a suit by a patron before the dram shop rule was created. See Reilly v. 180 Club, Inc., 14 N.J. Super. 420, 424 (1951). Hence, prior to the Rappaport decision in 1959, contributory negligence was available as a defense to dram shops which dispensed alcoholic beverages to actually or apparently intoxicated patrons.
Rappaport established our dram shop rule based upon principles of common law negligence. There it was decided that a tavern owner may be chargeable with common law negligence if he serves alcoholic beverages to an actually or apparently intoxicated person whose intoxication thereafter proximately causes injury to himself or third persons. The court recognized *496 that a sale of alcoholic beverages to a minor or an actually or apparently intoxicated person violates the law. These restrictions, now expressed in N.J.A.C. 13:2-23.1, are not narrowly intended to benefit the intoxicated person alone but are "wisely intended for the protection of members of the general public as well." Rappaport v. Nichols, supra, 31 N.J. at 202.
The issue of the contributory negligence of a third party killed by a motor vehicle operated by an intoxicated patron of the dram shop was never raised in Rappaport. In Soronen v. Olde Milford Inn, Inc., supra, however, the court did not allow the defense of contributory negligence of the tavern's patron who fell from a bar stool and fractured his skull after he had been served alcoholic beverages while apparently intoxicated. In rejecting contributory negligence as a defense, the court said:
... The accountability [of the dram shop] may not be diluted by the fault of the patron for that would tend to nullify the very aid being afforded. Since the patron has become a danger to himself and is in no position to exercise self-protective care, it is right and proper that the law view the responsibility as that of the tavern keeper alone. [46 N.J. at 592]
The Soronen court adopted the Restatement, Torts 2d. § 483, comment (c) (1965), as its rationale, which is to protect a class of persons from their inability to exercise self-protective care.
In Aliulis v. Tunnel Hill Corp., 59 N.J. 508 (1971), the court did not permit the dram shop to raise the defense of contributory negligence against a passenger who was injured while riding with an apparently intoxicated operator of a motor vehicle. The plaintiff-passenger was not a resident of the area where defendant-tavern was located. In refusing to allow contributory negligence as a defense, the court observed that plaintiff therein "had no real choice in order to get home but to ride with the intoxicated driver. In these circumstances, we think any contributory negligence should not be available as a defense to a tavern keeper." 59 N.J. at 511.
Forked River House heavily relies upon the Supreme Court's refusal in Aliulis to absolutely preclude contributory negligence *497 as a defense in all dram shop cases. In this connection the court observed:
We are not now prepared to say that in no case may the contributory negligence of an injured third party defeat his action against a seller of alcoholic beverages to underage or intoxicated persons. Suppose, for example, that an intoxicated minor driver, who had been served drinks by a defendant tavern keeper, collides with a plaintiff's car which had disregarded a red traffic light. We leave the availability of the defense in that and other analogous situations until the question is precisely presented. [59 N.J. at 511]
Defendant argues that the facts and circumstances of this case fall within the foregoing language of Aliulis. It argues that, unlike Aliulis, plaintiffs' decedents in the case at bar were under no compulsion of time or circumstance, yet they voluntarily chose the course which ultimately resulted in a tragic accident. Absent proof that decedents' judgments were impaired by their consumption of alcoholic beverages, defendant claims that its liability should be shared with that of decedents.
We find this argument to be quite persuasive. The essence of the dram shop rule is the protection of the intoxicated patrons and third persons who are in no position to protect themselves. Here, the only theory of contributory negligence on the part of the passengers advanced at the trial was the contention that they voluntarily rode on the fatal flight knowing the pilot was apparently intoxicated. Plaintiffs did not contend at the time of trial, or in this appeal for that matter, that Elms and Reidinger were also intoxicated or that their judgments were impaired. See Aliulis v. Tunnel Hill Corp., 59 N.J. at 510, n. 2; also see Tiger v. American Legion Post 43, 125 N.J. Super. 361, 369 (App.Div. 1973). As to Buckley, the evidence is undisputed that she consumed no alcoholic beverages at the Forked River House. Moreover, based on our carefully study of the appellate record, briefs and oral arguments, we are satisfied that plaintiffs do not seek to deprive defendant of contributory negligence as a defense based upon defendant's sale of alcoholic beverages to the deceased passengers. Rather, their position is grounded in the public policy of not allowing the liability of the dram shop to "be diluted by the fault of the patron for that would tend to *498 nullify the very aid being afforded." Soronen v. Olde Milford Inn, Inc., 46 N.J. at 592.
We perceive no expression of public policy in Soronen or Aliulis which precludes the contributory negligence of decedents found by the jury in this case. The public policy of the dram shop rule is to protect the intoxicated patron from his incapacity to protect himself or the public from foreseeable and unreasonable risk of harm. Aliulis v. Tunnel Hill Corp., supra, 59 N.J. at 511; Soronen v. Olde Milford Inn, Inc., supra, 46 N.J. at 592; Rappaport v. Nichols, supra, 31 N.J. at 652. The need to protect an intoxicated patron from foreseeable harm to himself and others is self-evident because he lacks the capacity "to exercise normal powers of judgment and prudence. He is a potential menace, not only to himself but to others." Soronen v. Olde Milford Inn, Inc., 84 N.J. Super. 372, 376 (App.Div. 1964), rev'd on other grounds 46 N.J. 582 (1966). He "is a danger to himself and is in no position to exercise self-protective care." 46 N.J. at 592.
In the circumstances of this case, we are satisfied that plaintiffs' decedents were not intoxicated and they had the capacity and legal duty to exercise reasonable care for their own protection from harm which Pirolo might cause. The jury found that they knew or should have known Pirolo was intoxicated. In the exercise of self-protective care, they should not have gone for a joy ride on the fatal flight. Unlike the passengers in Aliulis, the flight was not their sole means of transportation late at night in an isolated area. Indeed, it was not their transportation at all. Their decision to fly with an intoxicated pilot was voluntarily undertaken by persons whose judgments were not proven to have been impaired. See Petrone v. Margolis, 20 N.J. Super. 180 (App.Div. 1952).
We do not read Soronen and Aliulis to establish a public policy excluding a patron's negligence as a defense where the patron has the capacity to engage in self-protective measures. If a person has the capacity to protect himself from potential *499 harm which an intoxicated patron may foreseeably cause, then he must act as a reasonable, prudent person. The polestar is the capacity of the person seeking to recover damages to engage in self-protective measures. Where the patron has such capacity, we see no conflict between our comparative negligence law and the important public policy considerations underlying our dram shop rule. Hence, we hold that the Comparative Negligence Act is available to Forked River House in the circumstances here presented.
Defendant has further argued that since the enactment of our Comparative Negligence Act, the harshness of common law contributory negligence no longer prevails and that the basis for precluding plaintiffs' negligence as a defense no longer exists. This argument, although appealing, lacks a proper foundation in the reported cases. Our research does not reveal that the dram shop law is predicated upon the harshness of common law contributory negligence. None of the reported cases dealing with the dram shop rule discussed the harshness of common law contributory negligence. In any event, we do not anchor our holding to this argument because it entails implications more far-reaching than necessary for our decision. We leave this argument for another day.
Having decided that the dram shop in the circumstances of this case can raise the negligence of plaintiffs' decedents in partial defense, we must now decide how to mold the jury verdict. N.J.S.A. 2A:15-5.1 provides:
2A:15-5.1 Contributory negligence; elimination as bar to recovery; comparative negligence to determine damages
Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering. [L. 1973, c. 146, § 1.]
The trial judge charged the jury under our Comparative Negligence Act because there are nondram shop defendants involved. The jury found Buckley, Reidinger and Elms more *500 negligent than Forked River House. Therefore, pursuant to N.J.S.A. 2A:15-5.1, plaintiffs are not entitled to recover from Forked River House. The judgment must be remolded in accordance with N.J.S.A. 2A:15-5.1 and 2. We remand the matter to the trial court to enter an amended judgment in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] Judge Gaulkin did not participate in the oral argument, but all counsel agreed for him to participate in the decision.