JAMES A. BUCKLEY, ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ROSEANN BUCKLEY, DECEASED, PLAINTIFF-APPELLANT, v. ESTATE OF CHARLES PIROLO, DECEASED, OCEAN AVIATION, INC., A NEW JERSEY CORPORATION; AND CHEROKEE ENTERPRISES, INC., A NEW JERSEY CORPORATION; DEFENDANTS, AND FORKED RIVER HOUSE, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

PATRICIA CEROLI, ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF KARL ELMS, DECEASED, PLAINTIFF-APPELLANT, v. ESTATE OF CHARLES PIROLO, DECEASED, OCEAN AVIATION, INC., A NEW JERSEY CORPORATION; AND CHEROKEE ENTERPRISES, INC., A NEW JERSEY CORPORATION, DEFENDANTS, AND FORKED RIVER HOUSE, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

JOAN RIEDINGER, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF CHARLES E. RIEDINGER, PLAINTIFF-APPELLANT, v. OCEAN AVIATION, INC.; CHEROKEE ENTERPRISES, INC., AND ESTATE OF CHARLES PIROLO, DECEASED, DEFENDANTS, AND FORKED RIVER HOUSE, DEFENDANT-RESPONDENT.

Argued March 19, 1984—Decided November 13, 1985.

*Michael E. Cunningham* argued the cause for appellant Joan Riedinger (*Starkey, Kelly, Cunningham, Blaney & White,* attorneys).

*James J. Curry, Jr.,* argued the cause for appellants James A. Buckley, etc., and Patricia Ceroli, etc. (*Curry & Stein,* attorneys).

*Harold A. Schuman* argued the cause for respondent (*Schuman & Butz*, attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

In these wrongful death cases plaintiffs' decedents were passengers in an aircraft piloted by defendant Pirolo and leased to him by defendant Ocean Aviation, Inc. All the occupants were killed when the airplane crashed. Immediately before the flight the occupants had been patrons of the defendant Forked River House, where the pilot and two of the passengers were served intoxicating liquors. The evidence strongly suggests that the pilot, Pirolo, was intoxicated when he left the tavern and when the plane went down.

■ The question posed by these appeals, argued together, involves the interaction of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3, with our common-law dram-shop rule. Unlike many states New Jersey does not have a dram-shop statute, under which civil liability may be imposed on unlawful sellers of alcoholic beverages. However, we do recognize a common-law cause of action against a tavern based on negligent sale of intoxicating liquor. *See Rappaport v. Nichols*, 31 *N.J.* 188 (1959); Comment, "Increasing the Liability of New Jersey Taverns: Where to Draw the Line," 3 *Seton Hall L.Rev.* 233, 235–36 (1971); *see also* Note, "Vendor Liability for Torts of Intoxicated Patrons," 12 *U.Balt.L.Rev.* 139, 143 (1982) (describing *Rappaport* as one of two decisions in the forefront of the trend toward finding vendor civilly liable for damages to third party based on vendor's illegal sale of alcohol to a minor); *Nazareno v. Urie*, 638 *P.*2d 671, 674 n. 3 (Alaska 1981) (setting forth status of law in numerous other jurisdictions).

The trial court held that the tavern should not receive the benefit of any negligence of plaintiffs' decedents. The Appellate Division reversed and ordered that judgment be entered in favor of the tavern. Judgments in favor of plaintiffs against

other defendants were accordingly remolded. *Buckley v. Estate of Pirolo*, 190 *N.J.Super.* 491, 500 (1983).

We granted certification, 95 *N.J.* 199 (1983), to review the Appellate Division's determination that the Comparative Negligence Act applies to these plaintiffs' claims against a tavern under New Jersey's common-law dram-shop rule. Although we agree with the court below that the Comparative Negligence Act applies, we reverse and remand the cause for further proceedings to determine the impact of comparative negligence principles on these parties, inasmuch as a full and fair hearing on that aspect of the case was not afforded at trial.

# I

The Appellate Division opinion contains an accurate recitation of the facts that, on the evidence presented, a jury could have found:

On Saturday, December 4, 1976 Charles Riedinger worked with Charles Pirolo and their mutual employer, Hugh Lotto, from 8 a.m. until about 12 noon. The three men went to defendant Forked River House after work. While there Pirolo was served three or four beers and four or five double shots of scotch whiskey. At about 2 p.m. the three men went to a friend's house and each consumed a bottle of beer. Between 4:00 p.m. and 4:20 p.m. Pirolo and Riedinger met Karl Elms and others at the Forked River House where they were served additional alcoholic beverages. A witness testified that Pirolo was drunk before he left the tavern.

Pirolo suggested a plane ride and arranged to charter and pilot a twin-engine aircraft from Ocean Aviation, Inc., the operator of the Miller Air Park, which was ten miles from Forked River. At 5:15 p.m. Pirolo took Riedinger, Elms, Stephen Racz and Richard Gardener for a plane ride. The plane buzzed the Forked River House several times at altitudes of 70 to 80 feet. The plane touched some tree tops and might have clipped others.

At about 7:30 p.m. Pirolo and his passengers returned to the Forked River House where they discussed the flight they had just completed. Pirolo consumed two more bottles of beer before leaving the tavern at about 8 p.m. for a second flight. Decedents Elms and Riedinger joined Pirolo on the second and fatal flight, which departed at about 9 p.m. Roseann Buckley, who ate dinner at the Forked River House but did not consume any intoxicating beverages, also accompanied the three others on the second flight. At 9:20 p.m. the aircraft struck a radio tower near the Forked River House and crashed, killing all aboard.

   A postmortem examination revealed that Pirolo had a brain [sic: blood] alcohol reading of .171% at the time of his death. An expert witness, who testified for plaintiffs, calculated that at 8 p.m. when Pirolo was at the dram shop, his blood alcohol was .217%.

[190 *N.J.Super.* at 494.]

The personal representatives of three passengers who were killed in the crash started actions for the wrongful deaths of their decedents. See *N.J.S.A.* 2A:31-1 to -6. The cases were consolidated for trial. In each suit plaintiff charged defendants with negligence—Pirolo, the pilot, for the manner in which he operated the aircraft; Ocean Aviation, Inc. on a theory of negligent entrustment of the aircraft; and Forked River House for serving alcoholic beverages to Pirolo when the tavern knew or should have known that he was intoxicated.

Defendants, in addition to denying negligence, set up the defense of the passengers' negligence. As to defendant Forked River House, however, the trial court, in apparent reliance on *Aliulis v. Tunnel Hill Corp.*, 114 *N.J.Super.* 205 (App.Div.), aff'd, 59 *N.J.* 508 (1971), ruled early in the trial that principles of comparative negligence, applicable as between plaintiffs and the·remaining defendants, would not be applied between plaintiffs and the tavern. It based that ruling on the public policy that imposes on tavern keepers liability for injuries to third parties resulting from the sale of alcoholic beverages to persons actually or apparently intoxicated. However, at no point did the court acquaint the jury with its ruling, the effect of which was that that defendant Forked River House would not be afforded the benefit of any finding of the passengers' negligence. Instead, at the conclusion of the trial the court charged the jury just as if the tavern's negligence, like that of the other defendants (who were not affected by the dram-shop rule), was to be compared with the passengers' negligence. It was the court's intention, later fulfilled, to mold the verdicts consistent with its earlier ruling, communicated only to counsel, that comparative negligence principles would not apply as between plaintiffs and the tavern.

Therefore, the jurors received an instruction on the law of comparative negligence as it was at the time of this trial (as noted hereafter, *infra* at 81, the law has since been changed). Those instructions included an "outcome" charge, in which the jurors were told that "a plaintiff cannot recover money damages against a defendant if you find that the plaintiff's negligence was greater than the negligence of that defendant." See *Van Horn v. Blanchard Co.*, 88 *N.J.* 91 (1981) (plaintiff can recover only from defendants who were more negligent than plaintiff), and *Roman v. Mitchell*, 82 *N.J.* 336, 345–46 (1980) (jury in a comparative negligence situation should be given an "ultimate outcome" charge). To aid the jury in its deliberation the court submitted specific interrogatories directed to the percentages of negligence of all parties. The jury calculated the damages and found the following percentages of negligence:

**BUCKLEY**

| | |
|---|---:|
| Pirolo | 70 % |
| Ocean Aviation | 17–1/2% |
| Forked River House | 5–3/4% |
| Roseann Buckley | 6–3/4% |
| | 100 % |

**ELMS**

| | |
|---|---:|
| Pirolo | 61 % |
| Ocean Aviation | 13 % |
| Forked River House | 6 % |
| Elms | 20 % |
| | 100 % |

**RIEDINGER**

| | |
|---|---:|
| Pirolo | 61 % |
| Ocean Aviation | 13 % |
| Forked River House | 6 % |
| Riedinger | 20 % |
| | 100 % |

The court then molded the verdicts to reflect the appropriate amounts of recovery in favor of plaintiff Buckley against not only Pirolo and Ocean Aviation, whose negligence the jury had determined to be greater than Buckley's, but also against Forked River House, whose negligence had been found to be less than Buckley's. Similar calculations resulted in molded verdicts in favor of the representatives of Riedinger and Elms against not only Pirolo, whose percentage of negligence exceeded theirs, but also Forked River House, whose percentage of negligence the jury had determined to be less than that of Riedinger and Elms. Thus, the verdicts were molded to conform with the trial court's ruling that the tavern should not have the benefit of a finding of the passengers' negligence.

II

On Forked River House's appeal (the other defendants were not affected by the trial court's ruling and did not participate in the appeal) the tavern argued that the Comparative Negligence Act has modified our common-law rule of dram-shop liability. More specifically, the tavern contended that (1) the dram-shop law was fashioned by the courts as a way of avoiding the harsh effect of contributory negligence, and (2) the Comparative Negligence Act applies to all negligence actions, including dram-shop cases. Therefore, said the tavern, because comparative-negligence principles serve to ameliorate the harshness of the common-law rule of contributory negligence, and because this is a negligence case, the negligence of the passengers should be compared to the negligence of the tavern, 190 *N.J.Super.* at 495. Those contentions therefore required the court below to survey the New Jersey cases dealing with dram-shop liability, particularly *Rappaport v. Nichols, supra,* 31 *N.J.* 188; *Soronen v. Olde Milford Inn, Inc.,* 46 *N.J.* 582 (1966); and *Aliulis v. Tunnel Hill Corp., supra,* 59 *N.J.* 508.

In *Rappaport* this Court recognized for the first time a common-law cause of action based on a negligent sale of

alcoholic beverages. In that case plaintiff's decedent was killed when his automobile was struck by one driven by an intoxicated minor patron of the defendants' taverns. Plaintiff charged that defendants knew or should have known that the patron was underage and intoxicated. 31 *N.J.* at 192. The Court concluded that a jury might reasonably find that the patron's negligent operation of his automobile after leaving defendants' taverns was a "normal incident of the risk they created, or an event [that] they could reasonably have foreseen * * *." *Id.* at 204. In addition the Court noted that the provisions of a regulation of the Division of Alcoholic Beverage Control, promulgated pursuant to statutory authority and prohibiting the selling or serving of alcoholic beverages to minors or intoxicated patrons, were intended for the benefit of not only minors or intoxicated persons but members of the general public as well. *Id.* at 202. As the Court explained,

[w]e are fully mindful that policy considerations and the balancing of the conflicting interests are the truly vital factors in the molding and application of the common-law principles of negligence and proximate causation. But we are convinced that recognition of the plaintiff's claim will afford a fairer measure of justice to *innocent* third parties whose injuries are brought about by the unlawful and negligent sale of alcoholic beverages to minors and intoxicated persons, will strengthen and give greater force to the enlightened·statutory and regulatory precautions against such sales and their frightening consequences, and will not place any unjustifiable burdens upon defendants who can always discharge their civil responsibilities by the exercise of due care.

[31 *N.J.* at 205 (emphasis added).]

*Rappaport* had no occasion to address the question of the contributory negligence of the third party killed by the vehicle negligently operated by the dram-shop patron. However, the problem posed by the contributory negligence of the patron himself, as distinguished from that of a third person, was presented in *Soronen v. Olde Milford Inn, Inc., supra,* 46 *N.J.* 582, in which plaintiff's husband fell off a stool in defendant's tavern, fracturing his skull and sustaining an intracranial hemorrhage. The question for the Court in *Soronen* was whether contributory negligence was available as a defense for a tavern owner who negligently sold alcoholic beverages to a visibly-in-

toxicated patron, thereby proximately causing or contributing to his fatal fall. 46 *N.J.* at 589. The Court held that the tavern could not resort to the defense of contributory negligence, and pointed out that

> a tavern keeper may * * * be held civilly accountable for injuries [that] proximately result to the patron himself. The accountability may not be diluted by the fault of the patron, for that would tend to nullify the very aid being afforded. Since the patron has become a danger to himself and is in no position to exercise self-protective care, it is right and proper that the law view the responsibility as that of the tavern keeper alone.
>
> [46 *N.J.* at 592.]

Finally, in *Aliulis v. Tunnel Hill Corp., supra,* 59 *N.J.* 508, the Court faced the question of whether, as a matter of law, an injured third party—there a passenger in a tavern patron's automobile—is barred from recovery if that third party's negligence proximately contributed to her injury suffered in a two-car accident. 59 *N.J.* at 509. Here, too, the Court did not permit the tavern to assert the defense of contributory negligence. Significant, however, is the severely-circumscribed holding of that case. The Court noted that due to the geographic location of the tavern and the fact that the crash occurred at 3:00 a.m., the plaintiff had no real choice but to ride with the intoxicated driver in order to get home. *Id.* at 511. The opinion concluded with the Court's observation that while it was barring the contributory negligence defense as against this plaintiff,

> [w]e are not now prepared to say that in no case may the contributory negligence of an injured third party defeat his action against a seller of alcoholic beverages to underage or intoxicated persons. Suppose, for example, that an intoxicated minor driver, who had been served drinks by a defendant tavern keeper, collides with a plaintiff's car [that] had disregarded a red traffic light. We leave the availability of the defense in that and other analogous situations until the question is precisely presented.
>
> [*Id.*]

It was this quoted passage from *Aliulis* that influenced the Appellate Division to conclude in this case that the tavern's liability should be shared with that of decedents. The court below observed that the thrust of our dram-shop rule is to protect both intoxicated patrons and third persons "who are in

no position to protect themselves," 190 *N.J.Super.* at 497; that inasmuch as there was no contention that Riedinger or Elms was intoxicated or that either's judgment was impaired, the policy underpinnings of the rule would not be harmed by allowing Forked River House to assert the negligence of those decedents, *id.* at 497–98, as well as of Buckley, as to whom the evidence of her not having had anything to drink was undisputed, *id.* at 497. The Appellate Division observed:

> We do not read *Soronen* and *Aliulis* to establish a public policy excluding a patron's negligence as a defense where the patron has the capacity to engage in self-protective measures. If a person has the capacity to protect himself from potential harm [that] an intoxicated patron may foreseeably cause, then he must act as a reasonable, prudent person. The polestar is the capacity of the person seeking to recover damages to engage in self-protective measures. Where the patron has such capacity, we see no conflict between our comparative negligence law and the important public policy considerations underlying our dram shop rule. Hence, we hold that the Comparative Negligence Act is available to Forked River House in the circumstances here presented.
>
> [*Id.* at 498–99.]

Based on the jury's finding that in each instance the percentage of negligence of the passengers exceeded that of the tavern, the Appellate Division concluded that plaintiffs were not entitled to recover from defendant Forked River House. *Id.* at 500.

## III

Were we satisfied that the Appellant Division was entirely accurate in its appraisal of the facts and in its understanding of plaintiffs' contentions, we would probably simply affirm the judgment substantially on the basis of the comprehensive and analytically-sound opinion below. We are in full accord with that court's treatment of the authorities, its appreciation of the public-policy considerations behind our dram-shop rule, and its sensitive understanding of the interrelationship between the Comparative Negligence Act and the dram-shop rule. The opinion below satisfactorily answers the argument of plaintiffs that comparative negligence principles should not apply to

dram-shop cases; the reasoned rejection of that contention needs no further embellishment at our hands.

We are troubled, however, by the Appellate Division's application of its well-stated principles of law to the facts disclosed in this record. Our difficulty starts with the first sentence of the Appellate Division opinion, which refers to plaintiffs' claims as being made on behalf of "unintoxicated deceased passengers." 190 *N.J.Super.* at 493. The thought is amplified further on in the opinion:

> The essence of the dram shop rule is the protection of the intoxicated patrons and third persons who are in no position to protect themselves. Here, the only theory of contributory negligence on the part of the passengers advanced at the trial was the contention that they voluntarily rode on the fatal flight knowing the pilot was apparently intoxicated. Plaintiffs did not contend at the time of trial, or in this appeal for that matter, that Elms and Riedinger were also intoxicated or that their judgments were impaired. As to Buckley, the evidence is undisputed that she consumed no alcoholic beverages at the Forked River House. Moreover, based on our careful study of the appellate record, briefs and oral arguments, we are satisfied that plaintiffs do not seek to deprive defendant of contributory negligence as a defense based upon defendant's sale of alcoholic beverages to the deceased passengers. Rather, their position is grounded in the public policy of not allowing the liability of the dram shop to "be diluted by the fault of the patron for that would tend to nullify the very aid being afforded."
>
> [*Id.* at 497–98 (citations omitted).]

The problem that arises out of the foregoing passage originates in the trial court's ruling, announced on the fourth day of this nine-day trial and during the presentation of plaintiffs' cases, that the defense of the passengers' negligence would not be available to the tavern even though it was available to the other defendants. Therefore, defendant Forked River House was foreclosed from attempting to persuade the jury that plaintiffs' decedents were negligent. More to the point on this appeal, plaintiffs had no occasion to focus on the passengers' freedom from negligence in respect of the tavern or, put differently, to produce evidence the effect of which would be to deprive the tavern of the benefit of any passengers' negligence.

We recognize that for the representatives of Riedinger and Elms, such a demonstration would doubtless have created a

dilemma over what strategy to pursue. On the one hand, as to defendants Pirolo and Ocean Aviation plaintiffs would probably have been reluctant to emphasize any degree of decedents' intoxication. This, because in defense of a charge by those defendants that the passengers were contributorily negligent, voluntary intoxication would not be available to prove the absence of negligence. Moreover, as a matter of jury appeal, voluntary intoxication is not generally calculated to inspire sympathy. On the other hand, had the trial court's ruling not stood in the way, it would have been much to the advantage of the representatives of Riedinger and Elms to attempt to persuade the jury that the tavern, by its violation of the dram-shop rule, had robbed them as well as Pirolo of the power to reason sensibly, to appreciate the danger of going up in the aircraft with Pirolo, or to gauge Pirolo's condition.

■ Despite the foregoing dilemma, posed in large part by the different posture of the various defendants, and however that dilemma might have been addressed, the fact remains that when the jury made its determination as to the respective percentages of negligence as between the passengers and the tavern, it did so without the issue having been fully unfolded and thoroughly argued. Under the circumstances we cannot view with any confidence those determinations of the respective degrees of negligence.

The parties should be permitted to present their cases in the context of what the law is—including the tavern's defense of the passengers' negligence—rather than as the trial court misunderstood the law to be. In proceeding as it did here, the court created a "make believe" scenario, the legal equivalent of half a deck. Accordingly, the cases must go back for trial on the issue of the passengers' negligence as compared to the tavern's negligence.

On the retrial plaintiffs will have the burden of establishing the tavern's negligence, and the tavern's defensive burden will

be to demonstrate the passengers' negligence. Presumably defendant's argument will be based on the concept of contributory negligence in the form of what was formerly denominated as assumption of risk in its secondary sense, *i.e.*, as "an affirmative defense to an established breach of defendant's duty * * *." *Meistrich v. Casino Arena Attractions, Inc.*, 31 *N.J.* 44, 49 (1959). To that end the tavern will have to satisfy the fact-finder of the passengers' knowledge of the risk involved in embarking on the fatal flight, despite which they voluntarily accompanied the pilot and thereby participated to some degree in the proximate causation of plaintiffs' damages. In this connection the fact that Riedinger and Elms had both accompanied Pirolo on an earlier flight that bears all the earmarks of having been a hair-raising escapade may figure prominently in the balance in determining the respective percentages of negligence. We assume that the tavern's argument as to Buckley will be that despite the fact that she had not participated in the earlier adventure, she must have been fully aware of the dangers, either by observing Pirolo's condition in the bar, or overhearing the retelling of the earlier episode, or both. And as to all the passengers, the tavern will have, of course, the burden of demonstrating that whatever degree of negligence may have inhered in a passenger's conduct was a proximate cause of his or her death and the consequent damages.

For their part the plaintiffs, to meet the tavern's defense of their negligence, are free to contend that their decedents did not act unreasonably in going on the ill-fated flight, probably on some theory of their non-appreciation of any unreasonable risk. As to Riedinger and Elms, the representatives of these plaintiffs will have the opportunity to present evidence that their decedents were, as they now put it, "intoxicated or at least in some way impaired by the consumption of alcohol" at

the tavern.[1]   And although passenger Buckley was by all accounts perfectly sober, her representative too can urge that she was unable to assist herself.   The record reveals that she was asked to fly that night not by Pirolo but by Riedinger; therefore, her sobriety may not have helped her to evaluate Pirolo's state of intoxication (if indeed it was apparent) until she, in effect, was airborne and had no choice in the matter.

IV

Finally, we point out that the Comparative Negligence Act was amended about a year after the trial of this case.  See *L.* 1982, *c.* 191.   The legislature acted to overturn our decision in *Van Horn v. Blanchard, supra,* 88 *N.J.* 91, which interpreted the original Act as taking the "individual" approach to comparative negligence:  plaintiff could recover only from those defendants who were more negligent than plaintiff, even if in the aggregate his negligence was less than the total percentage of fault on the part of all the defendants.   To remedy the perceived inequity in that result the legislature adopted the "aggregate" approach:  plaintiff in a negligence action may recover damages in any case in which his negligence is less than or equal to the combined negligence of multiple defendants.

By its terms, however, the amended legislation applies only to causes of action arising on or after December 6, 1982, *L.* 1982, *c.* 191, § 3;  *N.J.S.A.* 2A:15–5.3, and hence is of no avail to these plaintiffs.   Had the amendment applied to this case and had the issue of comparative negligence in a dram-shop case been properly presented to the jury, and had the determinations as to the respective percentages of negligence been calculated as represented by the figures reached by this jury, the result

---

[1]Contrary to the statement in the opinion below, plaintiff Ceroli on behalf of Elms made that argument to the Appellate Division.   Plaintiffs Ceroli and Riedinger both argue to the same effect here.

under the amended legislation would be different: plaintiffs would not be barred from recovery against any defendant, because in each case the plaintiffs' negligence "was not greater than the combined negligence of the persons against whom recovery is sought." *L.* 1982, *c.* 191, § 1; *N.J.S.A.* 2A:15–5.1.

## V

The judgment of the Appellate Division is reversed and the cause remanded to the Law Division for further proceedings consistent with this opinion.

O'HERN, J., concurring.

I concur in the opinion and judgment of the Court because it correctly resolves the only issues that are before us. There is no necessity then in the circumstances of this case, that we revisit *Soronen v. Olde Milford Inn, Inc.,* 46 *N.J.* 582 (1966), as Justice Handler's concurrence suggests.

Should we be called upon to revisit *Soronen,* I believe that we will want to consider whether our evolving common law needs a course-correction in light of the legislative changes in principles of contributory negligence. *See Renz v. Penn Central Corp.,* 87 *N.J.* 437, 460–61 (1981) (railroad's statutory immunity modified by comparative negligence principles).

In a self-governing society, law derives much of its normative force from acceptance and understanding of the justness of its principles. It is difficult to explain how it occurs that possibly the most blameworthy person in an incident involving tavern liability can be immunized from any responsibility for injuries that person might suffer. Put another way, we must ask ourselves what sort of legal system would assess fault against Mrs. Buckley, possibly the most innocent of all involved in this tragic episode, while insulating the other passengers from such responsibility because of their drinking.

I can accept the policy of *Soronen* that could not tolerate the harshness of the doctrine of contributory negligence that would

cause the claim of a 1% negligent patron to be dismissed while excusing of all responsibility a tavern 99% at fault. I am less ready to accept that a 40% negligent patron should not bear some responsibility for the events in light of current principles of comparative negligence.

One of the goals of law is to influence the conduct of those who contribute to cause harm. I believe that goal will be advanced if we reconsider the appropriateness of allowing fact-finders to evaluate in some degree the fault of tavern patrons when that fault is a contributing cause of their injury.

Justice GARIBALDI joins in this opinion.

HANDLER, J., concurring in part and dissenting in part.

I concur in the result reached by the majority. As I understand its decision, this case is to be remanded for retrial on the ground that the issues of contributory negligence as to each of the decedent passengers were not properly or fully presented to the jury. This would appear to be so. I would emphasize, however, that in recognizing the availability to the tavern of the defenses of contributory negligence, in the context of our Comparative Negligence Act, *N.J.S.A.* 2A:15-1 to -3, with respect to the decedent-passengers who were patrons of the tavern, namely, Elms and Riedinger, the Court is not in any degree retreating from its holding in *Soronen v. Olde Milford Inn, Inc.*, 46 *N.J.* 582 (1966). We there held that a tavern may *not* avail itself of the defense of contributory negligence consisting of the voluntary intoxication by the patron when the tavern itself negligently caused the patron to become intoxicated. This has special pertinency with respect to these decedents, who, according to the record, may have been served alcohol by the tavern to the point of pronounced intoxication.

Similarly, I would emphasize that under our decision in *Aliulis v. Tunnell Hill Corp.*, 59 *N.J.* 508 (1971), a tavern was not permitted to raise the defense of contributory negligence with respect to an unintoxicated passenger in an automobile

driven by an intoxicated patron whose intoxicated condition was attributable to the negligence of the tavern. The Court expressed an understandable skepticism as to whether the passenger's conduct in accepting a ride could constitute a proximate contributory cause of the ensuing accident. In this case, the Court seizes upon some general *dicta* in *Aliulis* intimating that if a passenger exercised freedom of choice in accepting a ride with an intoxicated person, this might be a relevant consideration in determining the availability to a tavern the defense of contributory negligence, (59 *N.J.* at 511). Ante at 77. It is suggested that the possibility of a contributory negligence defense based on such a circumstance by the tavern is presented with respect to the decedent Buckley.

I am not prepared in this case to recognize or speculate upon the nature of the contributory negligence defense, based as it is on the controversial, imprecise and infirm doctrine of "assumption of risk." This Court in *McGrath v. American Cyanamid Co.*, 41 *N.J.* 272 (1963) criticized this doctrine stating: "... [t]he term 'assumption of risk' is so apt to create mist that it is better banished from the scene. We hope we have heard the last of it." 41 *N.J.* at 276. Another indictment of the doctrine of assumption of risk was made by Justice Frankfurter in his concurrence in *Tiller v. Atlantic Coast Line R. Co.*, 318 *U.S.* 54, 63 *S.Ct.* 444, 87 *L.Ed.* 610 (1943): "The phrase 'assumption of risk' is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition, and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas." It is a dubious defense to conduct that itself verges on wantonness and recklessness. *See Tabor v. O'Grady*, 61 *N.J. Super.* 446 (App.Div.1960).

In the absence of evidence that reasonably and strongly demonstrates some affirmative involvement and participation by Buckley and the other passengers in the tragic series of events that resulted in the fatal plane crash, as opposed to a

passive role in these events, I would hesitate to allow the assumption of risk—contributory negligence defense to be available to the tavern.

Whether certain kinds of negligence can constitute a proximate cause of accidental injury in the final analysis depends upon notions of public policy and fairness. *Soler v. Castmaster Div. of H.P.M. Corp.*, 98 *N.J.* 137 (1984); *Caputzal v. Lindsay Co.*, 48 *N.J.* 69 (1966). There is in this case much to be said against the soundness or fairness in permitting a tavern, which has caused the intoxication of its patron, to escape liability in the face of the relatively blameless conduct of an apparently uninebriated individual, such as Buckley, who has accepted a ride with the intoxicated patron. I would not in the absence of persuasive evidence and appropriate trial court consideration, rule in the abstract that contributory negligence consisting of an "assumption of risk" can under the Comparative Negligence Act dilute or defeat a tavern's responsibility for an accident attributable to its conduct in causing the drunkenness of its patron.

I therefore join in the Court's remand of this cause but would not allow the defense of contributory negligence except upon a strong evidential showing of positive involvement or participation in the accident. Further, I would not suggest, as does the Court, the kinds of hypothetical situations that could on a retrial trigger the defense of contributory negligence on behalf of the tavern against the decedent-passengers.

O'HERN and GARIBALDI, JJ., concurring in the result.

*For reversal and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, POLLOCK, O'HERN and GARIBALDI—6.

*Concurring in part; dissenting in part*—Justice HAND-LER—1.