586 A.2d 297

PETER LEE, PLAINTIFF, v. KIKU RESTAURANT, ET AL., DEFENDANT/THIRD PARTY PLAINTIFF, v. MYUNG CHUNG, THIRD PARTY DEFENDANT.

SEUNG GYUN CHOI, PLAINTIFF–APPELLANT, v. JANE DOE 1 THROUGH 5 (SAID NAME BEING FICTITIOUS AND UN-KNOWN), INDIVIDUALLY AND/OR EMPLOYEE OF KIKU RESTAURANT, INC., MANJO SHIM AND YOUN HA SHIM, DEFENDANTS/THIRD PARTY PLAINTIFFS–RESPONDENTS, v. MYUNG CHUNG, THIRD PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 29, 1990—Decided January 24, 1991.

Before Judges J.H. COLEMAN, DREIER and ASHBEY.

*Samuel L. Davis* argued the cause for appellant (*Davis, Saperstein & Salomon,* attorneys, *Samuel L. Davis,* of coun-

sel, *Beverly Milgram Flowers* and *Robert B. Linder,* on the brief).

*Thomas W. Izzard* argued the cause for respondents (*Fierro, Fierro & Izzard,* attorneys, *Thomas W. Izzard,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Plaintiff, Seung Gyun Choi, appeals from a judgment entered on a jury verdict in this dram-shop case. Choi was a passenger in a car driven by his manager, Myung Chung. Choi, Chung, and a co-worker, Peter Lee, had gone to the Kiku Restaurant in Fort Lee to celebrate plaintiff's successful completion of his first week at work. According to plaintiff,[1] such a celebration, sponsored by one's immediate superior, is a Korean tradition. All became highly intoxicated. Plaintiff contends that the three men consumed two five-ounce carafes of saki and then continued to drink saki served from tea kettles, each kettle the equivalent of five carafes. Lee became ill from the quantity of saki consumed, but plaintiff and Chung continued to drink. The amount consumed and the method of service were disputed by a bartender from the restaurant, but the jury's express findings supported plaintiff's testimony.

Plaintiff contended that when it was time to leave the restaurant he had no other way of getting home but to accompany Chung. Furthermore, not to have done so would have been an insult. In fact, when they left the restaurant, Chung did not even intend to go straight home, but rather to drink at another establishment. Plaintiff testified that Chung was staggeringly drunk when they left the restaurant and had to be helped to his car. Predictably, there was an accident; plaintiff was injured when Chung's vehicle ran into the back of a truck.

---

[1] Plaintiff did not speak English and testified through an interpreter.

Unfortunately, Chung has left the area and did not testify. His insurance carrier settled for the policy limits of $15,000.[2] The jury specifically found that both plaintiff and Chung were served alcohol while they were visibly intoxicated, that the negligence of plaintiff, Chung and the restaurant contributed to plaintiff's injuries, and that plaintiff suffered $75,000 in damages. The jury allocated liability: 10% to the restaurant, 80% to Chung and 10% to plaintiff.

On this appeal, plaintiff claims that the judge erred in permitting the issue of Chung's contributory negligence to go to the jury; any settlement by plaintiff with Chung did not reduce his recovery against the restaurant, except by a *pro tanto* $15,000 offset; and the judge erred by permitting the jury to consider plaintiff's comparative negligence.

The trial judge correctly charged that a driver is not absolved from responsibility by voluntary intoxication. (*Compare N.J. S.A.* 2C:2–2b, which even extends this principle to criminally reckless conduct). Furthermore, she charged that the Kiku Restaurant could be responsible for serving Chung when he was visibly intoxicated, and that the restaurant would be deemed negligent if it served alcoholic beverages under such circumstances. *See Rappaport v. Nichols,* 31 *N.J.* 188, 156 *A.*2d 1 (1959), and its progeny. Likewise, plaintiff himself could be responsible for the consequences of the accident, even as a passenger, if he failed to exercise reasonable care for his own safety, and that a factor affecting such decision would be whether plaintiff voluntarily rode in an automobile operated by a person under the influence of or affected by intoxicating liquor, after the plaintiff knew or should have known of the driver's condition. *See Buckley v. Estate of Pirolo,* 101 *N.J.* 68, 500 *A.*2d 703 (1985). All of these principles were described to the jury.

---

[2]Apparently plaintiff gave a release, accepting the $15,000 as full compensation for the injuries caused by Chung's participation. The effect of this release will be discussed *infra.*

■ In her charge, however, the judge failed to apprise the jury of the possibly controlling factor explained by the Supreme Court in *Buckley v. Estate of Pirolo*, 101 *N.J.* at 79–80, 500 *A.*2d 703, namely, that an intoxicated driver's or passenger's responsibility is to be assessed in order to determine whether and to what extent such party's appreciation of the risk was still effective, notwithstanding some level of inebriation. The fact-finder must assess the act of a patron-passenger accompanying an intoxicated driver to determine whether, and to what extent the passenger's rational decision-making ability has been impaired by intoxication. To this extent, *Buckley* modified the earlier cases of *Soronen v. Olde Milford Inn, Inc.*, 46 *N.J.* 582, 218 *A.*2d 630 (1966), and *Aliulis v. Tunnel Hill Corp.*, 59 *N.J.* 508, 284 *A.*2d 180 (1971).

We have learned from *Soronen* and *Aliulis* that a dram-shop (here a restaurant)[3] is directly responsible for the consequences of the accident if it causes its customer to fail to control his own actions or appreciate the risks surrounding his conduct. *Rappaport* and its progeny established the restaurant's liability for the intoxicated driver's actions, *i.e.*, the restaurant is liable if it has set the intoxicated driver on the road in a condition where the driver could injure another. *Buckley* does no more than fine-tune this analysis by requiring an inquiry into the particular circumstances to see whether an injured patron-passenger will bear some retained responsibility.

■ We have considered how the *Buckley* factor and the general principles of liability stated by the Appellate Division in *Buckley, see* 190 *N.J.Super.* 491, 464 *A.*2d 1136 (App.Div.1983), could be applied here and elsewhere when multiple claims involve a driver's and a restaurant's (or other dram-shop's) responsibility. There are two bases for the restaurant's liabili-

---

[3]While we will interchangeably use the term restaurant and dram-shop, it is clear that the restaurant here sold the alcoholic beverages by the drink (or multiples thereof) for on-premises consumption.

ty, the first a direct liability to the plaintiff-patron/passenger for serving him and reducing his capacity to appreciate the danger of his situation,[4] and the second a responsibility for the driver's actions. The restaurant's liability constituted an overlay on or enhancement of what would be the ordinary apportionment of negligence between the driver and passenger, had they been solely responsible for the accident and their own intoxication. By way of guidance for the retrial, we suggest the following procedure to explain this difference to the jury.

First, the jury should be instructed, by the usual motor vehicle charges, to assess the separate responsibilities of the plaintiff and defendant, assuming each was personally responsible for his own state of intoxication, and no dram-shop was involved. This gives effect to the legal principle that a voluntarily intoxicated driver must bear full responsibility for his or her manner of driving. *Cf. State v. Hammond,* 118 *N.J.* 306, 571 *A.*2d 942 (1990). All matters relating to the driver's negligence and the passenger's comparative negligence[5] may be explored. This apportionment will be tentative, however, subject to adjustment when the restaurant's liability is later considered. Included in this analysis is the operator's responsibili-

---

[4]While the pleadings do not allege a claim by plaintiff that he was served an excess of alcohol, the restaurant's defense raising plaintiff's contributory negligence implicates this issue. The testimony supports our conclusion that the parties drew plaintiff's intoxication into question. In fact, plaintiff's counsel argued against the restaurant's defense that plaintiff could have called a taxi cab, claiming that his client had been deprived of his reason by the restaurant's actions. In any event, the restaurant's claim that plaintiff was contributorily negligent implicates the question of whether plaintiff could appreciate the danger of his situation.

[5]For example, if the plaintiff or the driver had been the owner of the car and failed to have the brakes checked, or if the plaintiff negligently grabbed the steering wheel or otherwise failed to provide for his or her own safety, the judge should instruct the jury to consider the totality of the circumstances. If the plaintiff-patron were not a passenger, the fact-finder would consider all other relevant factors bearing on the parties' conduct, as a pedestrian, driver, etc., insofar as such conduct might be a proximate cause of the event or damages.

ty for driving in a drunken state, and the passenger's responsibility, to the extent he should and could have appreciated the danger of entering the vehicle with an intoxicated operator.[6]

The jury should then be instructed to consider the restaurant's responsibility for both portions of the tentative allocations of responsibility, making separate determinations for the passenger and driver. As to the passenger/patron, the jury should assess to what extent his intoxication was caused by the restaurant's conduct in serving the plaintiff when he was visibly intoxicated. This alcohol-induced inability to control his own conduct and refrain from riding with the intoxicated driver, is but another way of defining the passenger's claim of direct liability against the restaurant. As with the restaurant's responsibility for a driver's conduct, the threshold issue concerning this direct liability is whether the passenger was served when he was visibly intoxicated. This direct liability in effect compensates a plaintiff for having been put in a position where he could not engage in self-protective measures. This percentage responsibility is one of the two elements of the restaurant's total liability.

The jury should likewise consider the driver's failure to operate the car in a reasonable manner caused by the intoxication generated by the restaurant (or combination of dramshop defendants). Applying the *Buckley* factor to the driver's decision to operate the motor vehicle under the circumstances then pertaining, the jury will divide the percentage assessed against the driver into its separate elements. Again, the threshold issue for the restaurant's responsibility is whether the driver was served when he or she was visibly intoxicated; only if the jury finds this fact, should it weigh other relevant considerations. The jury must also evaluate the *Buckley* factor

---

[6]By way of example, if the jury found that plaintiff was moderately intoxicated and should have known not to have ridden with the intoxicated driver, the jury might assess 25% against plaintiff (the *Buckley* factor) for plaintiff's intoxication-clouded judgment, and 75% against the driver.

with respect to the driver, namely, it must evaluate the driver's intoxication to determine whether the driver retained some ability to appreciate that he or she was not fully capable of operating the vehicle.[7] Whatever percentage the jury had assessed for the responsibility of the driver should then be allocated between the driver and restaurant. The jury would then add the two elements of the restaurant's liability: the responsibility to the passenger, and its liability for the driver's conduct.[8]

Without such instructions, a jury presented with two major elements, namely (1) totally irresponsible driving and (2) a driver-patron repeatedly served when visibly intoxicated, might well focus mistakenly upon one factor to the exclusion of the other, losing sight of the interrelationship between these elements of responsibility. It also may not see the restaurant's separate responsibilities for serving the passenger and the driver.[9]

In the case before us, the *Buckley* factors were not charged either with respect to the passenger or driver. The jury thus

---

[7]Here, we also extrapolate the *Buckley* principle to the respective responsibility of an intoxicated driver and the restaurant.

[8]To extend the example in footnote 6, assume the jury had divided the 25% comparative negligence verdict against plaintiff, into a 15% liability against the restaurant and 10% against the passenger, and then divided the 75% initial verdict against the driver, 20% against the driver and 45% against the restaurant. The final verdict would be 10% against plaintiff, 30% against the driver and 60% against the restaurant (15% plus 45%). This latter breakdown is important in view of the Alcoholic Beverage Server Fair Liability Act, *N.J.S.A.* 2A:22A–1 *et seq.* *N.J.S.A.* 2A:22A–6 limits recoverable damages to that percentage of the negligence attributable to the server or other party. As this is a pre-Act case, however, the restaurant could be held liable for the total damages, and forced to proceed against the driver for contribution, except for the fact of the pretrial settlement with the driver.

[9]The necessity for the separate elements of the restaurant's responsibility can be made clear by supposing that the passenger and driver had been drinking in different establishments. Each could be liable, one for the responsibility to the passenger, the other for liability for the driver's conduct.

was not properly guided to determine how much of the 90% responsibility should be assessed against each of the two defendants, or how much of the 10% attributed to the plaintiff might properly be the responsibility of the restaurant. As between the restaurant and driver, it should have been told to focus upon Chung's conduct, not in rear-ending the truck, but in deciding to drive in his highly-intoxicated state, factoring into the equation all of the elements surrounding the restaurant's continual serving of Chung and his decision to drive. If Chung was as intoxicated as the testimony suggests, it appears to us that the 80% assessment against Chung was an unwarranted focusing upon the circumstances of the accident, as opposed to his inebriated decision to drive.

If the eventual percentage of the total damages assessed against Chung is more than the $15,000 settlement, that percentage is deemed satisfied by the settlement. If Chung is absolved of all responsibility, the settlement is considered a windfall. *Rogers v. Spady*, 147 *N.J.Super.* 274, 277–278, 371 *A.*2d 285 (App.Div.1977); cited with approval in *Cartel Capital Corp. v. Fireco of N.J.*, 81 *N.J.* 548, 569, 410 *A.*2d 674 (1980); *and see Ryan v. KDI Sylvan Pools, Inc.*, 121 *N.J.* 276, 579 *A.*2d 1241 (1990) (requiring, in another context, an apportionment of plaintiff's comparative negligence among the codefendants based upon their relative fault, and applying a comparatively negligent plaintiff's fault only against those defendants where such application is permissible). However, if additional factors are raised at retrial, the *Ryan* analysis may be required.[10]

The judgment appealed from is reversed, and this matter is remanded to the Law Division for a new trial on all issues.

---

[10]In the case before us there is no contention that the factors relate to anything but intoxication, and thus the *Ryan* allocation most probably will not be called for on remand.