603 A.2d 503

PETER LEE, PLAINTIFF, v. KIKU RESTAURANT, ET AL.,
DEFENDANTS AND THIRD–PARTY PLAINTIFFS, v.
MYUNG CHUNG, THIRD–PARTY DEFENDANT.

SEUNG GYUN CHOI, PLAINTIFF–RESPONDENT, v. JANE DOE 1
THROUGH 5 (SAID NAME BEING FICTITIOUS AND UN-
KNOWN), INDIVIDUALLY AND/OR AS SERVANT, AGENT OR
EMPLOYEE OF KIKU RESTAURANT, INC., DEFENDANTS
AND THIRD–PARTY PLAINTIFFS, AND KIKU RESTAURANT,
INC., MANJO SHIM AND YOUN HA SHIM, DEFENDANTS
AND THIRD–PARTY PLAINTIFFS–APPELLANTS, v. MYUNG
CHUNG, THIRD–PARTY DEFENDANT.

Argued October 9, 1991—Decided March 17, 1992.

*Thomas William Izzard* argued the cause for appellants (*Fierro, Fierro & Izzard,* attorneys).

*Samuel L. Davis* argued the cause for respondent (*Davis, Saperstein & Salomon,* attorneys; *Saragail Carpe,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

In this case we consider once again the principles that determine allocation of fault in actions brought to recover damages from taverns or restaurants for serving alcohol to visibly-intoxicated patrons. Plaintiff Choi, a patron of the restaurant, who was subsequently injured as a passenger in a car accident, recovered a verdict against the restaurant on the basis that it had served alcohol to the driver when he was visibly intoxicated. Plaintiff had previously settled with the intoxicated driver.

The Appellate Division reversed and remanded, holding that the trial court had not correctly instructed the jury on the principles governing the comparative negligence of the passenger and driver. *Lee v. Kiku Restaurant,* 245 *N.J.Super.* 518, 586 *A.*2d 297 (1991). The court also proposed a new two-step procedure to be used by juries in allocating fault in such cases. *Id.* at 523–25, 586 *A.*2d 297. We granted certification, 126 *N.J.* 325, 598 *A.*2d 884 (1991).

I

Our summary of the underlying facts is based on the trial record. On March 14, 1986, plaintiff Seung Gyun Choi completed his first week as a salesman for Art Lines, an importer of Korean Art. That evening, Choi's manager, Myung Chung, took Choi and Peter Lee, Choi's co-worker, to Kiku Restaurant

to celebrate. On arriving at the restaurant, Chung ordered dinner and three carafes of saki. The men consumed the saki and a second round of three carafes before any food was served. Choi testified that although he did not like saki, Korean custom dictated that he accept the saki when it was offered by his manager.

During dinner Chung ordered a teakettle of saki, which held the equivalent of approximately five carafes. While drinking saki from the teakettle, Lee became ill and stumbled to the bathroom. Chung and Choi retrieved Lee and held him up as he walked back to the table, lurching and bumping into other customers along the way. Chung then ordered yet another kettle of saki. During dinner Chung was walking around the bar area, talking loudly, and slurring his words. After Chung and Choi had consumed the second kettle, the sushi chef commented that Chung had had too much to drink. The restaurant then served the men a complimentary half-kettle of saki. Chung drank most of it, paid the bill, and the three staggered out of the restaurant. Lee could barely walk, and Chung was talking loudly and unable to walk in a straight line.

Once outside, Chung suggested continuing the party at Chung's home. Aware that Chung was drunk, Choi asked Chung if he was capable of driving. When Chung assured him he was fine, both Choi and Lee got into the car and promptly fell asleep. About five miles from the restaurant Chung hit a truck from the rear and the three occupants of the car suffered serious injuries. Blood-alcohol tests performed at the hospital indicated that at the time of the accident all three men were significantly intoxicated.

Choi filed suit against Chung and Kiku Restaurant, alleging that the restaurant was liable because the restaurant's employees had served alcohol to Chung when he was visibly intoxicated. Kiku Restaurant filed a third-party claim for contribution against Chung. Chung failed to respond to interrogatories or appear at depositions. The trial court struck Chung's answer

because he failed to participate in discovery. *See Rule* 1:2–4. Chung's insurance carrier settled with Choi and Kiku Restaurant for the policy limit of $15,000.

In the ensuing trial of Choi's claim against Kiku Restaurant, the trial court instructed the jury that Chung was required to exercise such care as a driver as a reasonably prudent and sober person would have exercised under the same or similar circumstances. Similarly, the court charged the jury that Choi was required to exercise "[s]uch reasonable care and caution for his own safety as an ordinary prudent person would exercise under like circumstances. * * * The test * * * is whether an ordinarily cautious or prudent person under the same or similar circumstances would have incurred the risk of riding with the driver." The court also instructed the jury that the restaurant was negligent if the employees served alcohol to a visibly intoxicated person "in circumstances where a reasonably prudent person would foresee that by serving the alcoholic beverages to such a person he is causing or contributing to an unreasonable risk of harm to others that may result thereafter by the conduct of that intoxicated person to injuries of others."

The jury found that employees of Kiku had served Chung when he was visibly intoxicated, that Choi and Chung were also negligent, and that the negligence of all three parties proximately caused the accident. The jury assessed the damages at $75,000, and found Kiku Restaurant ten percent at fault, Choi ten percent at fault, and Chung eighty percent at fault. Choi moved for a new trial on the ground that the trial court had erred in permitting the jury to consider his contributory negligence in its allocation of fault. The trial court denied the motion.

The Appellate Division determined that the trial court did not err in submitting to the jury the issues of the driver's and the passenger's contributory negligence. 245 *N.J.Super.* at 521, 586 *A.*2d 297. The court concluded, however, that the trial court had not properly instructed the jury on the relationship

between the restaurant's fault and the ensuing conduct of Choi and Chung.

The Appellate Division held that on remand the jury should first assess the fault of the driver for driving in an intoxicated state and that of the passenger for riding with an intoxicated driver, as if no tavern had been involved. *Id.* at 523–24, 586 *A.*2d 297. On the assumption that the jury would find that the restaurant had served the driver when he was visibly intoxicated, the court stated that the jury should then apportion the fault initially imputed to the driver between the driver and the restaurant; in doing so, the jury should decrease the percentage of fault allocated to the driver to the extent that his inability to appreciate the risk of driving and his negligent operation of the car were due to the intoxication caused by the restaurant. *Id.* at 523–25, 586 *A.*2d 297.

Concerning the passenger's liability, the court directed that if the jury were to determine that the restaurant had served the passenger when he was visibly intoxicated, it should then apportion the fault initially imputed to the passenger between the passenger and the restaurant; in that process, the jury should decrease the percentage of fault allocated to the passenger to the extent that his inability to appreciate the danger of riding with an intoxicated driver was due to the intoxication caused by the restaurant. The Appellate Division also emphasized that the trial court should have focused the jury's attention not on Chung's negligent driving but on his decision to drive in a highly intoxicated state. *Id.* at 526, 586 *A.*2d 297.

## II

In order to refine the legal principles that should govern the apportionment of fault between a dram shop and its intoxicated customers, we first trace the development of New Jersey's dram-shop rule. This Court first recognized a common-law cause of action based on the negligent sale of alcoholic beverages in *Rappaport v. Nichols*, 31 *N.J.* 188, 156 *A.*2d 1 (1959). In

*Rappaport,* four different taverns served alcohol on the same evening to an intoxicated minor. After leaving the last tavern, the minor drove home in a severely intoxicated state. His automobile collided with another car, killing the driver. The driver's wife sued the taverns, claiming that their employees knew or should have known that the patron was under age and intoxicated when they served him. Emphasizing the importance of protecting innocent victims from the effects of the tavern's negligence, *id.* at 202, 156 *A.*2d 1, this Court sustained the plaintiff's claim on the theory that a jury could find that the patron's negligent operation of his automobile after leaving the taverns was a "normal incident of the risk [the taverns] created, or an event [that] they could have reasonably foreseen." *Id.* at 204, 156 *A.*2d 1.

In *Soronen v. Olde Milford Inn,* 46 *N.J.* 582, 218 *A.*2d 630 (1966), we extended *Rappaport* to protect not only innocent third parties but intoxicated patrons as well. In that case the tavern served two shots of whiskey and three beers to a patron who was already severely intoxicated. Shortly thereafter, the patron fell off his stool, struck his head on a metal column, and died as a result of his injuries. In defending the suit brought by the patron's widow, the tavern argued that the patron had been contributorily negligent because he had voluntarily drunk to the point of intoxication, *id.* at 585, 218 *A.*2d 630, a defense that under then-existing law would have barred plaintiff's claim completely. The Court rejected the defense, reasoning that to allow exoneration of the tavern because of the customer's intoxication "would tend to nullify the very aid being afforded" by the common-law dramshop rule. *Id.* at 592, 218 *A.*2d 630. Thus the Court held that "[s]ince the patron has become a danger to himself and is in no position to exercise self-protective care, it is right and proper that the Court view the responsibility as that of the tavern alone." *Ibid.*

Although the *Soronen* decision foreclosed a tavern from defending on the ground that a plaintiff's voluntary intoxication constituted contributory negligence and thus barred any recov-

ery, this Court has noted that other negligent acts might defeat or diminish a plaintiff's recovery in dram-shop actions. In *Aliulis v. Tunnel Hill Corp.*, 59 *N.J.* 508, 284 *A.*2d 180 (1971), an injured passenger in a tavern patron's automobile sought recovery from the tavern, alleging that the tavern had sold alcohol to the driver while he was visibly intoxicated. The tavern defended on the ground that the passenger had been contributorily negligent for riding with an intoxicated driver. The Court rejected the defense on the basis that the plaintiff had had no choice but to accompany the driver, but limited its holding to the specific factual circumstances:

> We are not now prepared to say that in no case may the contributory negligence of an injured third party defeat his action against a seller of alcoholic beverages to * * * intoxicated persons. Suppose, for example, that an intoxicated minor driver, who had been served drinks by a defendant tavern keeper, collides with a plaintiff's car [that] had disregarded a red traffic light. We leave the availability of the defense in that and other analogous situations until the question is precisely presented. [*Id.* at 511, 284 *A.*2d 180.]

In *Buckley v. Estate of Pirolo*, 101 *N.J.* 68, 500 *A.*2d 703 (1985), we addressed our common-law dram-shop rules in the context of the Legislature's adoption of comparative negligence. In *Buckley*, personal representatives of passengers killed in an airplane crash brought wrongful-death actions against the airplane's pilot, the lessor of the airplane, and the tavern that had served alcoholic beverages to the pilot and two passengers prior to the fatal flight. A third passenger, Buckley, had consumed no alcohol. The trial court barred all testimony relating to the issue of contributory negligence, stating that principles of comparative negligence were not applicable in dram-shop actions. On appeal, the tavern argued that unlike the plaintiff in *Aliulis*, the passengers had voluntarily assumed the risk of accompanying the visibly-intoxicated pilot, and thus the defense of comparative negligence should be allowed.

The Appellate Division reversed, reasoning that the dram-shop rule's protection of "the intoxicated patron from his incapacity to protect himself or the public from foreseeable and unreasonable risk of harm" would not be undermined by limit-

ing a tavern's liability in cases in which the patron had the capacity to appreciate the risk but failed to take self-protective measures. *Buckley v. Estate of Pirolo,* 190 *N.J.Super.* 491, 498, 464 *A.*2d 1136 (1983). Thus the Appellate Division allowed the tavern to raise the comparative-negligence defense, on the assumption that the decedents had not been intoxicated. The court emphasized that

> [t]he polestar is the capacity of the person seeking to recover damages to engage in self-protective measures. Where the person has such capacity, we see no conflict between our comparative negligence law and the important public policy considerations underlying our dram shop rule. [*Id.* at 499, 464 *A.*2d 1136.]

This Court adopted the Appellate Division's reasoning but rejected its characterization of the plaintiffs as "unintoxicated." 101 *N.J.* at 78, 500 *A.*2d 703. We remanded the case to afford the tavern the opportunity to prove that the passengers had had the capacity to appreciate the risk of accompanying the intoxicated pilot. *Id.* at 79–80, 500 *A.*2d 703.

Thus, *Buckley* permitted a limited comparative-negligence defense in dram-shop actions. Specifically, a tavern could reduce its liability if it could demonstrate that the plaintiff had had the capacity to appreciate the risk associated with engaging in the activity that led to the plaintiff's injuries. But if the tavern served the plaintiff alcohol when he or she was visibly intoxicated, and the patron's intoxicated state rendered him or her unable to take self-protective measures, *Buckley* concluded that the tavern could not benefit from the defense of comparative negligence. *Id.* at 77–81, 500 *A.*2d 703.

In *Buckley,* evidence in the record supported a finding that the tavern had served two of the passengers when they were visibly intoxicated and that those passengers had been unable to appreciate the risk of riding with the intoxicated pilot. If on remand a jury had made such a finding, the tavern could have successfully asserted a comparative-negligence defense only against Buckley, the unintoxicated patron. That prompted Justice O'Hern to observe that

[i]t is difficult to explain how it occurs that possibly the most blameworthy person in an incident involving tavern liability can be immunized from any responsibility for injuries that person might suffer. Put another way, we must ask ourselves what sort of legal system would assess fault against Mrs. Buckley, possibly the most innocent of all involved in this tragic episode, while insulating the other passengers from such responsibility because of their drinking.

I can accept the policy of *Soronen* that could not tolerate the harshness of the doctrine of contributory negligence that would cause the claim of a 1% negligent patron to be dismissed while excusing of all responsibility a tavern 99% at fault. I am less ready to accept that a 40% negligent patron should not bear some responsibility for the events in light of current principles of comparative negligence. [*Id.* at 82–83, 500 *A.*2d 703 (O'Hern, J., concurring).]

In reassessing whether the *Soronen* rule is adequate to fairly apportion fault between a tavern and an intoxicated patron under prevailing principles of comparative negligence, we note that courts in the vast majority of states view a patron who voluntarily drinks to the point of intoxication as at least partially responsible for the consequences of his or her conduct. That is so whether the state completely insulates a tavern from liability or whether it premises dram-shop liability on negligence or strict-liability principles. *See, e.g., Cory v. Shierloh,* 29 *Cal.*3d 430, 174 *Cal.Rptr.* 500, 503–504, 629 *P.*2d 8, 11–12 (1981) (statute renders voluntary consumption of alcohol the sole proximate cause of patron's injury); *Sheehy v. Big Flats Community Day, Inc.,* 73 *N.Y.*2d 629, 543 *N.Y.S.*2d 18, 22–23, 541 *N.E.*2d 18, 22–23 (1989) (party injured by his own voluntary consumption of liquor did not have cause of action against provider of alcohol); *Tome v. Berea Pewter Mug, Inc.,* 4 *Ohio App.*3d 98, 446 *N.E.*2d 848, 852 (1982) (intoxicated patron must be held to standard of reasonably prudent sober person); *see also* Julius F. Lang, Jr. & John J. McGrath, *Third Party Liability for Drunken Driving: When "One for the Road" Becomes One for the Courts,* 29 *Vill.L.Rev.* 1119 (1983–84) (thorough examination of dram-shop liability throughout the United States); James R. Myers, *Dramshop Liability: The Blurry Status of Drinking Companions,* 34 *St. Louis U.L.J.* 1153 (1990) (discussion of strict-liability dram-shop statutes and the complicity defense).

Most states that apply comparative-negligence principles in dram-shop actions allow the tavern to assert a defense of comparative negligence against a plaintiff who has voluntarily consumed alcohol to the point of intoxication. *See, e.g., Del E. Webb v. Superior Court of Arizona,* 151 *Ariz.* 164, 726 *P.*2d 580, 586 (1986); *Lyons v. Nasby,* 770 *P.*2d 1250, 1255 (Colo. 1989); *O'Hanley v. Ninety–Nine Inc.,* 12 *Mass.App.* 64, 421 *N.E.*2d 1217, 1219–20 n. 3 (1981); *Munford, Inc. v. Peterson,* 368 *So.*2d 213, 218–19 (Miss.1979); *Bissett v. DMI Inc.,* 220 *Mont.* 153, 717 *P.*2d 545, 547 (1986); *Baxter v. Noce,* 107 *N.M.* 48, 752 *P.*2d 240, 244 (1988); *Tome v. Berea Pewter Mug, Inc., supra,* 446 *N.E.*2d at 853; *Barrie v. Pennsylvania Liquor Control Bd.,* 137 *Pa.Cmwlth.* 514, 586 *A.*2d 1017, 1019–20 (1991), *appeal denied,* 527 *Pa.* 651, 593 *A.*2d 423 (1991); *Young v. Caravan Corp.,* 99 *Wash.*2d 655, 663 *P.*2d 834, 838 (1983). These courts seem to agree that "voluntary intoxication is a self-indulgent act * * * [and] a person who voluntarily consumes alcohol to the point of intoxication is at the very least partially responsible for his injuries." *Lyons, supra,* 770 *P.*2d at 1255. Thus, to the extent that drinking to the point of intoxication proximately causes injury, those courts recognize that principles of comparative negligence dictate that an intoxicated patron be accountable for the conduct leading to intoxication. As one court has noted, foreclosing a tavern from showing that its breach of duty "did not contribute to the plaintiff's injuries or * * * that the plaintiff's negligence was greater than that of the defendant * * * would clearly be contrary to traditional tort principles." *Id.* at 1259.

Courts that have permitted a patron's voluntary intoxication to constitute evidence of comparative negligence have been unwilling to allow the patron's fault to be diminished to the extent that the patron's intoxicated state rendered him or her unable to assess adequately the risk of the behavior that led to the patron's injuries. One court suggested that so to hold would "put[ ] a premium on drunkenness." *Tome, supra,* 446

*N.E.*2d at 852 (quoting *Zalewski v. Yancey,* 101 *Ohio App.* 501, 140 *N.E.*2d 592, 594 (1956)).

We note the reluctance of courts in states with dram-shop acts that hold a tavern strictly liable for injuries resulting from its serving drinks to an intoxicated patron to allow a person who drinks until intoxicated to escape all responsibility for the resultant injuries. In some of those states, a patron who drinks to the point of intoxication and is subsequently injured cannot recover from the tavern for his or her injuries under the state's dram-shop act. *See, e.g., Weeks v. Princeton's,* 570 *So.*2d 1232, 1233 (Ala.1990); *Jodelis v. Harris,* 118 *Ill.*2d 482, 115 *Ill.Dec.* 369, 372, 517 *N.E.*2d 1055, 1058 (1987); *Ciemierek v. Jim's Garage,* 90 *Mich.App.* 565, 282 *N.W.*2d 396, 398 (1979); Lang & McGrath, *supra,* 29 *Vill.L.Rev.* at 1126 n. 36. Further, although a tavern sued under a statute imposing strict liability ordinarily cannot assert a comparative-negligence defense, some courts have allowed a tavern to assert a "complicity" defense against a plaintiff who actively contributed to or participated in the intoxication of a patron who later caused plaintiff's injury. *See, e.g., Sterenberg v. Sir Loin Inc.,* 183 *Ill. App.*3d 631, 131 *Ill.Dec.* 941, 944, 539 *N.E.*2d 294, 297, *appeal denied,* 125 *Ill.*2d 574, 130 *Ill.Dec.* 489, 537 *N.E.*2d 818 (1989) (third party injured by intoxicated patron denied recovery because party "willingly participated" in companion's intoxication "by joining in his drinking activities and providing him with significant companionship."); *Craig v. Larson,* 432 *Mich.* 346, 439 *N.W.*2d 899, 904 (1989) (third party barred from recovery because he actively participated in patron's intoxication by buying him drinks); *Spragg v. Shuster,* 398 *N.W.*2d 683 (Minn. Ct.App.1987) (active participation in patron's drinking bars recovery); *Slager v. HWA Corp.,* 435 *N.W.*2d 349, 351–52 (Iowa 1989) (tavern can assert defenses of complicity and assumption of risk against injured third party); *see also* Myers, *supra,* 34 *St. Louis U.L.J.* 1153 (discussion of strict-liability dram-shop statutes and the complicity defense). Although a complicity defense ostensibly focuses not on the third party's own drink-

ing but on his or her contribution to the intoxicated state of another patron, at least one court has noted that the complicity defense is "only a hybrid form of contributory negligence." *Baxter, supra,* 752 *P.*2d at 243. Thus, even under state statutes that impose strict liability on taverns for damages caused because the tavern served alcohol to a visibly-intoxicated patron, courts have considered an intoxicated patron's fault in determining whether the patron may bring an action and have permitted a jury to consider the fault of an intoxicated third party.

### III

In reassessing the principles that should govern liability in dram-shop litigation, we are strongly influenced not only by the principles of comparative negligence but also by the public interest in deterring those who would create risk to others by voluntarily drinking to the point of intoxication. Our statutory and case law reflect the compelling public policy that those who voluntarily become intoxicated must be held responsible for the consequences of their behavior. We have observed that the legislative objective in mandating punishment for those who operate an automobile in an intoxicated condition was "to curb the senseless havoc and destruction caused by intoxicated drivers." *State v. Tischio,* 107 *N.J.* 504, 512, 527 *A.*2d 388 (1987). Thus, this Court "has not hesitated to give a broad construction to the terms of [the drunk-driving statute] when a narrow or literal interpretation would frustrate the fundamental regulatory goals underlying New Jersey's drunk-driving laws." *Id.* at 513, 527 *A.*2d 388. *See also State v. Hammond,* 118 *N.J.* 306, 318, 571 *A.*2d 942 (1990) (involuntary intoxication not available as a defense to charge of operating a motor vehicle while intoxicated); *State v. Mulcahy,* 107 *N.J.* 467, 478–79, 527 *A.*2d 368 (1987) (defendant's attempt to put keys in the ignition was "operation" of a motor vehicle sufficient to warrant arrest for purposes of a sobriety test); *State v. Wright,* 107 *N.J.* 488, 490, 527 *A.*2d 379 (1987) (proof of actual operation of a motor vehicle

not required to secure a conviction for refusal to submit to breathalyzer test).

Permitting juries to consider the fault of a patron in voluntarily drinking to the point of intoxication is also consistent with the apparent intent of the Legislature in enacting the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (the "Act"), *L.*1987, *c.* 152, after this cause of action had arisen. An earlier version of the Act would have barred a person who became voluntarily intoxicated and sustained personal injuries from recovering damages against a licensed alcoholic beverage server. *See* Assembly Insurance Committee Statement to Assembly Committee Substitute for A. 2264, 2209, 2211, 1876, 1679, 865, and 554 (*L.*1987, *c.* 152). The Governor's conditional veto of the proposed legislation advocated recognition of such a cause of action for a patron who was visibly intoxicated when served, and further recommended that the licensee's liability be tempered "by applying comparative negligence principles where the injured party had the capacity to engage in self-protective measures." Governor's Conditional Veto to A. 2264, 2209, 2211, 1876, 1679, 865, and 554 (*L.*1987, *c.* 152). The Legislature substantially adopted the Governor's recommendations. See *N.J.S.A.* 2A:22A–5, –6. In our view, consideration of the conduct of a patron in becoming voluntarily intoxicated, if not mandated by the new legislation, is obviously consistent with its objectives.

■ We are persuaded that continued application of our holding in *Soronen,* adopted at a time when contributory negligence operated as a complete bar to a plaintiff's recovery, is no longer appropriate. We now hold that in dram-shop litigation a jury should apportion fault between the patron and the tavern based on the extent to which each party's negligence contributed to the plaintiff's injuries. Thus, in determining a patron's fault, a jury may consider the extent to which the plaintiff's injuries were caused by the patron's conduct in drinking to the point of intoxication. Similarly, the jury will consider the

extent to which the tavern's actions in serving the patron after obvious intoxication contributed to the plaintiff's injuries. The principles of comparative negligence will apply to joint tort-feasors in dram-shop actions as they apply in all other negligence cases involving joint tortfeasors. We agree with the Arizona Supreme Court's observation that

> [t]he interests of the public are better served by the common law principles that make most persons responsible for their conduct. Allowing the assertion of the [comparative negligence defense] furthers both the public policy of deterring drunk driving and the judicial policy of limiting rules of nonresponsibility for special groups. [*Del E. Webb v. Superior Court of Arizona, supra,* 726 P.2d at 586 (citations omitted).]

■ Our holding today modifies the standard announced in *Buckley* in two ways. First, an intoxicated patron may no longer avoid responsibility for injuries proximately caused by his or her voluntary decision to consume alcohol to the point of intoxication. Second, once a jury determines that a tavern continued to serve drinks to a visibly-intoxicated patron, the jury should not be instructed, absent exceptional circumstances, to determine the extent to which the patron retained some capacity to appreciate the risk of engaging in the activity that led to the accident. If a tavern serves alcohol to a visibly-intoxicated patron, a court will ordinarily presume the patron's lack of capacity to evaluate the ensuing risks.

■ Thus, a patron who voluntarily becomes visibly intoxicated and is then served alcohol by a tavern will not be entitled to a jury charge that places all responsibility for the ensuing injuries on the tavern. A voluntarily-intoxicated dram-shop patron is distinguishable from other plaintiffs who are excused for their failure to protect themselves from harm. *Cf. Cowan v. Doering,* 111 *N.J.* 451, 458–67, 545 *A.*2d 159 (1988) (hospital could not assert defense of contributory negligence of suicidal patient who jumped out of window); *Suter v. San Angelo Foundry & Mach. Co.,* 81 *N.J.* 150, 167, 406 *A.*2d 140 (1979) (factory worker's comparative negligence not available as defense in products-liability case because "an employee engaged at his assigned task on a plant machine * * * has no meaning-

ful choice"). However, under some circumstances an alcoholic may be a person who, in becoming intoxicated, could be excused from a failure to exercise reasonable care. *See Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 590–94, 538 *A.*2d 794 (1988) (holding that alcoholism constitutes disease and deemed a handicap under New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42). Thus, in the event a patron was known to the tavern's employees to be an alcoholic, the duty of the tavern to refrain from serving that patron could arise well before the patron reaches the stage of being visibly intoxicated. *Cf. State v. Radziwil*, 235 *N.J.Super.* 557, 563–66, 563 *A.*2d 856 (App.Div. 1989) (holding evidence of regular intoxication admissible as evidence of habit), *aff'd*, 121 *N.J.* 527, 582 *A.*2d 1003 (1990).

Our decision today, however, does not diminish a tavern's duty to its patrons and innocent third parties. We emphasize our continued adherence to the principle underlying *Buckley:* a tavern cannot escape all liability for its negligence in serving an intoxicated patron by blaming the patron for unreasonable conduct caused wholly or in part by the tavern's actions. As the Supreme Court of Colorado noted,

> the fact that the patron has acted in an unacceptable manner should in no way lessen the equally unacceptable conduct of a tavern owner. One who stands behind a bar and serves drink after drink to a visibly intoxicated customer engages in behavior which is as opprobrious as that of the customer. We think it "morally indefensible" to condone the conduct of a tavern owner who, so long as the patron is able to pay, continues to serve the intoxicated patron a steady stream of alcohol. [*Lyons, supra,* 770 *P.*2d at 1255.]

Thus, a tavern that serves alcohol to a visibly intoxicated patron will continue to be liable for its proportionate share of damages proximately caused by the tavern's negligence.

In determining a tavern's proportionate share of fault in dram-shop litigation, cases such as this also require juries to factor into their apportionment deliberations the conduct of a patron-driver who negligently operates a vehicle after leaving the dram shop. If, as here, the driver has been served alcohol by the tavern when visibly intoxicated, the jury may allocate the fault involved in the negligent operation of the vehicle

between the patron-driver and the tavern based on the jury's qualitative evaluation of all of the evidence bearing on the extent to which the respective conduct of the patron-driver and the tavern contributed to the negligent operation of the vehicle. In making that allocation, the jury may consider the patron-driver's conduct in becoming voluntarily intoxicated, the extent of the tavern's misconduct in continuing to serve the patron-driver, and the specific evidence relating only to the nature and circumstances of the negligent operation of the vehicle. Juries must be informed that they are authorized to allocate responsibility for negligent operation of a vehicle between the patron-driver and the tavern based on the relevant evidence.

In recasting the principles of dram-shop liability to permit a jury to assess the fault imputed to the customer's voluntary intoxication, the fault of the tavern in serving the visibly intoxicated customer, and to allocate the fault that contributes to the customer's negligent operation of his motor vehicle, we merely adhere to the basic principle of comparative negligence that a defendant contributing to an injury caused by multiple factors should bear no more of the ultimate liability than is proportionate to that defendant's relative share of the aggregate fault. *N.J.S.A.* 2A:15–5.2.

Because the trial court submitted this case to the jury on the basis of legal principles different from those set forth in this opinion, we remand for a new trial. On remand, assuming evidence is presented consistent with that offered at the first trial, the jury will be required to apportion fault between the passenger, the restaurant, and the driver in accordance with principles of comparative negligence. The trial court should instruct the jury that it may find the restaurant to be negligent if its employees served the passenger or driver when they were visibly intoxicated. If the jury finds that the restaurant served the passenger when he was visibly intoxicated, the presumption is that the passenger lacked the capacity adequately to assess the risk of accompanying the intoxicated driver. Thus, a res-

taurant ordinarily may not assert a comparative-negligence defense based on the passenger's decision to ride with the driver. However, the restaurant may assert comparative negligence and reduce its liability to the extent that the passenger's drinking to the point of intoxication contributed to his inability to appreciate the risk of his behavior.

Similarly, if the restaurant served the driver when he was visibly intoxicated, the restaurant is ordinarily responsible for the driver's decision to drive in an intoxicated state. The restaurant may assert the defense of comparative negligence to the extent that the driver's act of drinking to the point of intoxication contributed to his inability to drive carefully. As noted, the responsibility for the driver's inability to exercise due care in the operation of his vehicle may be apportioned by the jury between the driver and the restaurant based on the jury's qualitative evaluation of the evidence.

As modified, we affirm the judgment of the Appellate Division and remand the matter to the Law Division for retrial.

*For affirmance, modification and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.