19 A.3d 470

FREDERICK W. VOSS, PLAINTIFF–RESPONDENT, v. KRISTOFFE J. TRANQUILINO, JAIME A. TRANQUILINO, DEFENDANTS, AND TIFFANY'S RESTAURANT, DEFENDANT–APPELLANT.

Argued March 14, 2011—Decided June 1, 2011.

94

*Richard S. Ranieri* argued the cause for appellant (*Weber, Gallagher, Simpson, Stapleton, Fires & Newby,* attorneys; *Mr. Ranieri* and *Kevin C. Carter,* on the brief).

*William A. Wenzel* argued the cause for respondent.

*Robert G. Devine* submitted a brief on behalf of amicus curiae New Jersey Lawsuit Reform Alliance (*White and Williams,* attorneys; *Mr. Devine* and *Michael W. Horner,* of counsel; *Mr. Devine, Mr. Horner,* and *Kim Kocher,* on the brief).

PER CURIAM.

The judgment of the Appellate Division is affirmed substantially for the reasons expressed in the thoughtful and thorough opinion by Judge Lisa. *Voss v. Tranquilino,* 413 *N.J.Super.* 82, 992 *A.*2d 829 (App.Div.2010). As the Appellate Division's decision reflects, it is far from clear that, through the enactment of the automobile insurance reform measure that contained *N.J.S.A.* 39:6A–4.5(b), the Legislature meant to engage in an implied repeal of contrary provisions and policy set forth in the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act, *N.J.S.A.* 2A:22A–1 to –7 (known commonly as the "Dram Shop Act").

There is a strong presumption against repealing statutory provisions by implication. *See Twp. of Mahwah v. Bergen Cnty. Bd. of Taxation,* 98 *N.J.* 268, 281, 486 *A.*2d 818, *cert. denied,* 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.*2d 696 (1985). A finding of repeal by implication "requires clear and compelling evidence of th[at] legislative intent, and such intent must be free from reasonable doubt." *Id.* at 280–81, 486 *A.*2d 818 (citations omitted). The required clarity of evidence to support such legislative intent is absent here. As the Appellate Division properly concludes, the Legislature's overriding objective when enacting the legislation that contained *N.J.S.A.* 39:6A–4.5(b) was to effect automobile insurance reform. *Voss, supra,* 413 *N.J.Super.* at 91, 992 *A.*2d 829. Through a combination of mechanisms to eliminate insurance fraud, address uninsured motorists, and reduce costs, premium rate roll-back was promoted through a comprehensive legislative plan of action. *Ibid.; see also Camp v. Lummino,* 352 *N.J.Super.* 414, 417, 800 *A.*2d 234 (App.Div.2002). Nowhere in that legislative history was there any suggestion that the statute

would affect liability under the Dram Shop Act. Indeed, there is no evidence that the specific bar to suit set forth in *N.J.S.A.* 39:6A–4.5(b) was intended to have impact beyond the motor vehicle accident and insurance setting that Title 39 addresses. That understanding of the words of subsection 4.5(b) keeps the provision's application consistent with the clear purpose and single object advanced by the omnibus insurance reform legislation.

Finally, it is no small matter in our analysis that the bar in subsection 4.5(b) can coexist with the Dram Shop Act's deterrence and liability-imposing principles. There is no incompatibility between the two provisions. An intoxicated person is deterred from driving drunk by losing the right to sue under Title 39 for insurance coverage for his injuries. On the other hand, permitting an injured drunk driver to file an action against a liquor establishment and its servers for serving a visibly intoxicated patron similarly advances the goal of deterring drunk driving. In allowing the latter form of action to proceed, rather than barring it *ab initio* by *N.J.S.A.* 39:6A–4.5(b), we can be assured that the application of established principles of comparative negligence will apportion properly responsibility for damages as between dram shop parties and the injured drunk driver. *See N.J.S.A.* 2A:22A–6; *N.J.S.A.* 2A:15–5.1.

Justice ALBIN, dissenting.

When the Legislature expresses its will—and its policy preferences—through the plain language of a statute, the role of this Court is not to paste in a judicial exception because the result in a particular case does not seem desirable. But that is exactly what the majority has done here in affirming the Appellate Division. It has rewritten a clear and unambiguous statute under the dubious assumption that the Legislature did not mean what it said.

The plain, unadorned language of *N.J.S.A.* 39:6A–4.5(b), without exception, bars a person convicted of drunk driving who is involved in an accident from filing suit against the tortfeasor, who he claims caused his injuries. Under the language of the statute, it

makes no difference whether the tortfeasor is a person who ran a red light or a stop sign, or one who served him drinks at the bar he last visited. But *the majority has concluded—wrongly, in my opinion—*that the Legislature did not really mean to exclude taverns from suit, despite the statutory language to the contrary.

However imperfect or misguided the statute may seem to the majority as written, our duty is to give it effect. Because the majority has failed to follow the first principle of statutory construction—to honor the plain language of *N.J.S.A.* 39:6A–4.5(b) as expressing the intent of the Legislature—I respectfully dissent.

### A.

In this case, plaintiff had been drinking alcohol at Tiffany's Restaurant. Later, while driving his motorcycle, he was involved in an accident with another vehicle. Shortly after the accident, his blood alcohol content (BAC) registered 0.196 percent. *See N.J.S.A.* 39:4–50(a) (stating that person driving vehicle with BAC of 0.08 percent or greater is guilty of driving under influence). He pled guilty to driving under the influence of alcohol. Plaintiff filed a personal-injury lawsuit against Tiffany's.

*N.J.S.A.* 39:6A–4.5(b) provides that

> [a]ny person who is convicted of, or pleads guilty to, operating a motor vehicle in violation of [*N.J.S.A.*] 39:4–50 ... [or *N.J.S.A.*] 39:4–50.4a[ ], or a similar statute from any other jurisdiction, in connection with an accident, *shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of the accident.*
>
> [ (emphasis added).]

The language of the statute is crystal clear. A person convicted of driving under the influence or refusal to submit to a breath test, "in connection with an accident," cannot sue another person or entity for any loss resulting from the accident. *Compare ibid.* (limiting certain plaintiffs' right to sue); *with N.J.S.A.* 39:4–50 (prohibiting driving while intoxicated); *and N.J.S.A.* 39:4–50.4a(a) (revoking license of person refusing to submit to breathalyzer test).

The overarching public policy undergirding *N.J.S.A.* 39:6A–4.5(b) "is to deter drunk driving." *Caviglia v. Royal Tours of Am.*, 178 *N.J.* 460, 474, 842 *A.*2d 125 (2004). Indeed, in *Caviglia*, we stated that under the plain language of *N.J.S.A.* 39:6A–4.5(b), "[a] motorist *may not pursue a personal injury action if he was intoxicated* at the time of the accident." *Ibid.* (emphasis added).

The Legislature has the authority to pass statutes that "create incentives to coerce compliance with the law." *Id.* at 475, 842 *A.*2d 125. *N.J.S.A.* 39:6A–4.5(b) creates a very clear incentive not to drink to excess and drive. *See id.* at 474–75, 842 *A.*2d 125. After all, the drunk driver—even when he is not at fault in causing an accident—will not be able to sue for reimbursement of his medical bills, for lost wages needed to support his family, or for pain and suffering. Contrary to the suggestions of the Appellate Division, this statutory provision has nothing to do with "reduc[ing] automobile insurance rates." *See Voss v. Tranquilino*, 413 *N.J.Super.* 82, 93, 992 *A.*2d 829 (App.Div.2010). It makes no difference whether the drunk driver has liability insurance to the highest possible limits. The statute is advancing a social policy to deter drunk driving regardless of whether the intoxicated "victim" has paid into the insurance pool from which he seeks to draw.

The law may seem overly harsh to some. But it is just one in a series of laws passed by the Legislature aimed at reducing the carnage caused on our highways by drunk drivers.[1] The Legislature is empowered to enact laws to "meet the pressing social needs of the times, even if those laws seem to others ill-advised or

---

[1] *See, e.g., N.J.S.A.* 39:4–50(a) (establishing penalties—significantly increased by L.2001, c. 12—both for driving while intoxicated and for owner's allowing intoxicated person to drive his vehicle); *N.J.S.A.* 2A:15–5.6(b)(3) (establishing social-host liability when intoxicated person causes automobile accident); *N.J.S.A.* 36:2–98 (declaring New Jersey "HERO Campaign state" to promote designated drivers); *N.J.S.A.* 39:4–50.9 to –50.13 (creating "Drunk Driving Victim's Bill of Rights"); *N.J.S.A.* 39:4–50.17 (for those sentenced for driving while intoxicated, permitting court to require installation of interlock device to ensure sober driving).

later prove to be failures." *Caviglia, supra,* 178 *N.J.* at 477, 842 *A.*2d 125.

The Appellate Division conceded that "a literal reading of the statute suggests that all claims are barred." *Voss, supra,* 413 *N.J.Super.* at 84, 992 *A.*2d 829. The appellate panel, however, "reach[ed] a contrary conclusion," based on its own public-policy analysis. *See ibid.* In doing so, the panel transgressed a cardinal rule of statutory construction: "We cannot, and should not, 're-write a plainly-written enactment of the Legislature' or 'write an additional qualification which the Legislature pointedly omitted.'" *Mazzacano v. Estate of Kinnerman,* 197 *N.J.* 307, 323, 962 *A.*2d 1103 (2009) (quoting *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005)). Indeed, we have warned that "[t]here is a fine line between interpreting statutory language and engrafting a judicial standard over that language." *Serrano v. Serrano,* 183 *N.J.* 508, 518, 874 *A.*2d 1058 (2005).

The panel basically reasoned that—despite the straightforward language of the statute—it makes no sense that the Legislature would insulate from suit the tavern that served its visibly intoxicated patron who later was involved in an accident. *See Voss, supra,* 413 *N.J.Super.* at 84–85, 992 *A.*2d 829. In reaching that conclusion, the panel relied on its interpretation of the legislative history surrounding the Dram Shop Act. *Id.* at 87–90, 992 *A.*2d 829. But the panel's discourse on this legislative history is not enlightening because the language of *N.J.S.A.* 39:6A–4.5(b) is clear enough.

Absent the application of *N.J.S.A.* 39:6A–4.5(b), the Dram Shop Act imposes liability on a tavern that serves a visibly intoxicated patron who later is injured in an accident caused by the patron's own drunkenness. *See N.J.S.A.* 2A:22A–5. However, *N.J.S.A.* 39:6A–4.5(b) was enacted ten years after passage of the Dram Shop Act. *See L.* 1997, *c.* 151, § 13 (enacting *N.J.S.A.* 39:6A–4.5(b)); *L.* 1987, *c.* 152, § 5 (establishing dram-shop liability). The Legislature is presumed to have knowledge of the dram-shop legislation it wrote when it enacted *N.J.S.A.* 39:6A–4.5(b). *See In*

*re Petition for Referendum on City of Trenton Ordinance 09–02,* 201 *N.J.* 349, 359, 990 *A.*2d 1109 (2010) (citation omitted). Surely, if the Legislature intended to carve out cases arising under the Dram Shop Act, it knew how to do so.[2] The Legislature could have written the statute to read that a person convicted of drunk driving "shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of the accident, *except for cases arising under the Dram Shop Act.*" There is nothing in the sweeping language of *N.J.S.A.* 39:6A–4.5(b) to suggest that tavern owners were exempt from the statute. Now by judicial decree they are.

The majority has failed to fully appreciate that the Legislature made specific policy choices in adopting *N.J.S.A.* 39:6A–4.5(b). As indicated, under the statute, the drunk driver involved in an accident is barred from filing a lawsuit even when he is not at fault. Thus, the drunk driver has no cause of action if he is otherwise obeying the rules of the road and is struck by a car that is barrelling through a red light at 100 miles per hour. Likewise, he has no cause of action against a public entity if, while stopped at a red light, a municipal garbage truck with worn-out brakes plows into the rear of his car. That does not mean that the violators of our motor-vehicle laws are not subject to deterrence through municipal-court prosecutions and administrative-agency actions that could lead to such sanctions as the loss of driving privileges. *See, e.g., N.J.S.A.* 39:5–30 (permitting suspension/revocation of driver's license for violation of Title 39).

The same holds true for dram-shop violations. *N.J.S.A.* 39:6A–4.5(b) does not bar a third party injured by a drunk driver from filing an action against a tavern that served a visibly intoxicated patron, nor does it bar the patron from suing the tavern if he is injured by means other than driving a vehicle—assuming that the

---

[2] Under the social-host-liability statute, for example, the Legislature specifically barred an adult guest from suing a homeowner-host for serving alcohol at a party at which the guest becomes intoxicated and later suffers injury in an automobile accident. *See N.J.S.A.* 2A:15–5.7.

patron's intoxication proximately caused an accident and injuries. *See N.J.S.A.* 2A:22A–5 (setting forth dram-shop liability). Moreover, our alcoholic-beverage laws subject a tavern that serves a visibly intoxicated patron to administrative sanctions that include fines and potential license suspension. *See N.J.S.A.* 33:1–31(g) (permitting suspension of liquor license for violation of regulations); *N.J.A.C.* 13:2–23.1(b) (prohibiting licensee from serving alcohol to any person "actually or apparently intoxicated").[3]

*N.J.S.A.* 39:6A–4.5(b) *explicitly* repeals the drunk driver's right to sue in all cases in which he previously possessed a common-law and statutory right to do so. The Legislature, we must presume, balanced the equities and the various public-policy advantages and disadvantages of the approach that it chose in enacting *N.J.S.A.* 39:6A–4.5(b). That is not to say that exempting taverns from the scope of *N.J.S.A.* 39:6A–4.5(b) would not be a rational policy for the reasons expressed by the Appellate Division. Certainly, permitting a tavern to be sued by the intoxicated motorist would have a certain deterrent effect on taverns' serving visibly intoxicated patrons. *See Voss, supra,* 413 *N.J.Super.* at 93–94, 992 *A.*2d 829. But the Legislature did not choose the policy that the Appellate Division finds reasonable, and I am not willing to engraft a judicial exception onto the statute that the Legislature did not.

"We do not pass judgment on the wisdom of a law or render an opinion on whether it represents sound social policy. That is the prerogative of our elected representatives." *Caviglia, supra,* 178 *N.J.* at 476, 842 *A.*2d 125 (citation omitted). Unlike the Appellate Division, I find that the literal reading of the statute is, in fact, the

---

[3] A point overlooked by the Appellate Division is that the passage of the Dram Shop Act was not intended to expand but rather contract a tavern's common-law liability for its own negligence. *See Fisch v. Bellshot,* 135 *N.J.* 374, 382, 640 *A.*2d 801 (1994) (explaining that Dram Shop Act was intended to limit taverns' liability in order "to address the drastic cost increases and widespread unavailability of liability insurance for licensed alcoholic-beverage servers"); *see also Lee v. Kiku Restaurant,* 127 *N.J.* 170, 175–82, 603 *A.*2d 503 (1992) (discussing history of dram-shop liability).

plain meaning of the statute, and that we should give effect to the statute's clear language and not attempt an end run around it.

Judicial restraint commands that we not tinker with a clearly expressed, unambiguous statute that has a rational basis and purpose. A judge does not have to agree with a statute to enforce it.[4] Because the majority—following the Appellate Division's lead—is engaging in judicial tinkering to make the statute more reasonable in its eyes, I respectfully dissent. I therefore would reverse the Appellate Division.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA and HOENS and Judge STERN (temporarily assigned)—5.

*For reversal*—Justices ALBIN and RIVERA-SOTO—2.

---

[4] Justice Oliver Wendell Holmes made this point rather bluntly in his own time: "Of course I know and every other sensible man knows that the Sherman law is damned nonsense, but if my fellow citizens want to go to hell, I am here to help them—it's my job." Michael J. Gerhardt, *The Rhetoric of Judicial Critique: From Judicial Restraint to the Virtual Bill of Rights*, 10 *Wm. & Mary Bill Rts. J.* 585, 595 (2002) (citing Gary J. Aichele, *Oliver Wendell Holmes, Jr.: Soldier, Scholar, Judge* 140 (John Milton Cooper, Jr., ed. 1989)).